IN THE

# SUPREME COURT

OF

# OREGON

Argued March 23, decided May 19, 1908.

## STATE *v*. HUME.

[95 Pac. 808.]

LICENSES—REGULATION OF OCCUPATIONS—STATE'S POWER.

1. While all lawful occupations, professions and trades are subject to reasonable regulation by the State as to the time, place or manner of enjoyment, and property is held subject to the rule that it cannot be used so as to injure others, the State cannot, under any pretended exercise of its police power, prohibit persons from pursuing such callings.

SAME.

2. Any business, the pursuit of which may be prohibited by the State, as an exercise of police power, may be licensed, if not *malum in se,* and the reasonableness of the license fee cannot be questioned, though so great as to amount almost to inhibition.

FISH—CAPTURE—REGULATION—STATE'S POWER—"FERÆ NATURÆ."

3. Migratory fish in navigable waters of a State, like game within its borders, are classed as animals *feræ naturæ,* the title to which, so far as it is susceptible to being asserted before possession is obtained, is held by the State, in its sovereign capacity, in trust for all its citizens, and, as an incident of the assumed ownership, the State may protect the species from extinction by exhaustive methods of capture.

LICENSING CANNING OF SALMON—CONSTITUTIONALITY OF STATUTE.

4. The State being vested with title to animals *feræ naturæ,* they cannot be lawfully captured without the State's express or implied permission, and hence Act Feb. 19, 1907, Gen. Laws 1907, pp. 100–103, 107, c. 55, §§ 1, 2, 11, making it unlawful to engage in the business of canning salmon without obtaining a license and paying a prescribed fee, is a valid exercise of legislative power.

From Curry: JAMES W. HAMILTON, Judge.

The defendant, R. D. Hume, was convicted of the crime of canning salmon, without first having obtained a license therefor. From the judgment which followed, defendant appeals.　　　　　　　　　　　　AFFIRMED.

For the appellant there was a brief and an oral argument by *Mr. William C. Hale.*

For the State there was a brief over the names of *Mr. George M. Brown,* District Attorney, *Mr. Andrew M. Crawford,* Attorney General, and *Mr. Isaac H. Van Winkle,* Assistant Attorney General, with an oral argument by *Mr. Van Winkle.*

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant was convicted of the crime of canning salmon without first having obtained a license therefor, alleged to have been committed in Curry County, July 18, 1907. He appeals from the judgment which followed, assigning as error the action of the court in overruling a demurrer to the information, interposed on the ground that the facts stated therein do not constitute the commission of a crime. As the validity of the law, which is alleged to have been violated, is the chief question to be considered, it is unnecessary to set forth a copy of the pleading which charges the perpetration of the offense in the language of the statute.

1. The act of February 19, 1907 (Gen. Laws Or. 1907, p. 100, c. 55), the efficacy of which is challenged, provides, in effect, that it shall be unlawful for any person to engage in the business of canning salmon, within the State of Oregon, without first having obtained a license therefor: Section 1.

Any person engaged in this State in the business of canning fresh salmon in hermetically sealed tins, is required to pay a license fee, varying in amount from $100 to $1,500, depending upon the number of cases of such fish which the canner packed during the year preceding the season for which a license is required: Section 2.

Any person violating the provisions of the act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined, etc.: Section 11.

The foregoing synopsis is thought to contain all the causes of the statute that are material, combating which it is contended by defendant's counsel that the act in question, not having stipulated for any control of salmon canneries, is not a police regulation; that the clause, requiring canners of such fish to pay certain sums of money, as a condition precedent to the right to pursue a lawful business, is not a license, but a means adopted to raise a revenue, making the tax unequal in its operation, violative of the organic law of the State, thereby rendering that part of the statute void, and demonstrating that persons engaged in canning salmon are not obliged to comply therewith, and hence an error was committed in overruling the demurrer.

If the canning of fresh salmon be considered as the exercise of a common right which may be enjoyed by all citizens of the State without permission from any superior, it is probable that the exactions demanded for the alleged privilege are so much in excess of the necessary sums to cover the cost of issuing licenses and to defray the incidental expense attending the regulation of the business, as to disclose a legislative intent to impose a tax on an industry, and not the burdening of it with a license, and for that reason the statute may be void in this particular because it violates the constitution of the State, as claimed. Thus in *Ellis* v. *Frazier,* 38 Or. 462 (63 Pac. 642: 53 L. R. A. 454), it was held that an act requiring a yearly payment of $1.25 on every bicycle, as a condition precedent to the right to use it on the public roads, and setting aside a certain part of each payment, to create a particular fund to be employed in constructing, maintaining, and repairing the highways and for other purposes, was a statute providing for the payment of a tax, and therefore invalid as a pretended exercise of the police power. The decision in that case is based on the principle that the ordinary use by a person of a bicycle could not be classed as an occupation; that the

act then under consideration did not attempt to regulate the use of such vehicles; and that the sum thus demanded was so much in excess of the cost of issuing the license as conclusively to manifest a purpose on the part of the legislative assembly to raise a revenue. So, too, in *Reser* v. *Umatilla County*, 48 Or. 326 (86 Pac. 595) it was ruled that a law imposing a burden of 20 cents per head on sheep owned by nonresidents who brought them within the state for pasturage, and further prescribing a payment of 5 cents per head for each county through which they might be driven, was a means of raising a revenue, and therefore violative of the constitution, because the tax was unequal. The careless riding of a bicycle might endanger travelers on the highway, to protect whom the state could undoubtedly regulate the manner of the use of such carriages. Sheep are liable to contagious diseases, the dissemination of which may result in great damage to persons engaged in caring for, or raising, such flocks; and, to prevent injury from that source, the state unquestionably possesses power to cause sheep to be inspected, and if they are found to be infected, to make such disposition of them as will preclude the contamination from spreading and thus becoming a menace to other flocks.

All occupations, professions, and trades that may be legally pursued are necessarily subject to such reasonable regulations as the state may impose, in respect to the time, place, or manner of enjoyment, in order to promote the greatest good to the greatest number of its citizens. It is generally conceded, though controverted by eminent authority, that the right of a person to lands which he holds in any manner is qualified, and known in law as an estate, while the absolute right of property therein is vested in the state, which may subject the premises to taxation and to the right of eminent domain: Tiedeman's Police Power, § 115. This author, at Section

135 of the same work, intimates that all personal property is the product of some man's labor, and, however the title thereto may have been legally acquired, the interest in such property is a vested right which is not held by any favor of the state. This declaration, when applied to animals *ferae naturae,* is probably broader than warranted, as we shall hereafter attempt to show. It may be stated as a general principle that all property in a civilized community is held subject to the rule that it cannot be used in such a manner as to injure others, and when this elementary proposition is violated, the state in exercising its police power can correct the evil. As a deduction from the postulates asserted, it necessarily follows that while the state may regulate all legitimate occupations, trades, etc., it cannot, under any pretended exercise of its police power, prohibit persons from pursuing such callings, for if the prosecution of a single lawful industry could be interdicted, when not violative of the rights of others, the transaction of all business could be suspended, and stagnation and starvation would ensue, affecting all persons who were compelled to remain in the territory.

2. Any business, however, the pursuit of which may be prohibited by the state, as an exercise of police power, may be licensed, if not *malum in se,* and though the sum of money demanded for the privilege may be so great as to amount almost to inhibition, yet it is difficult to understand how the citizen who is engaged in such enterprise can legally question the amount of the exaction.

3. It is a generally recognized principle that migratory fish in the navigable waters of a state, like game within its borders, are classed as animals *ferae naturae,* the title to which, so far as that claim is capable of being asserted before possession is obtained, is held by the state, in its sovereign capacity in trust for all its citizens; and as an incident of the assumed ownership, the legislative assembly may enact such laws as tend to protect the species from injury by human means and from extinction by

exhaustive methods of capture: 13 Am. & Eng. Ency.
Law (2 ed.), 556; 7 Cur. Law, 1659; 19 Cyc. 988; Freund,
Police Power, § 419; *Ex parte Maier,* 103 Cal. 476 (37
Pac. 402: 42 Am. St. Rep. 129) ; *Magner* v. *People,* 97 Ill.
320; *People* v. *Truckee Lumber Co.* 116 Cal. 397 (48 Pac.
374: 39 L. R. A. 581: 58 Am. St. Rep. 183) ; *State* v.
*Snowman,* 94 Me. 99 (46 Atl. 815: 50 L. R. A. 544: 80
Am. St. Rep. 380) ; *State* v. *Rodman,* 58 Minn. 393 (59
N. W. 1098) ; *State* v. *Roberts,* 59 N. H. 256 (47 Am. Rep.
199) ; *Geer* v. *Connecticut,* 161 U. S. 519 (16 Sup. Ct.
600: 40 L. Ed. 793). "The individual," says Mr. Justice
HADLEY in *Smith* v. *State,* 155 Ind. 611 (58 N. E. 1044:
51 L. R. A. 404) "has no natural right to take game, or
to acquire property in it, and all the right he possesses
or can possess in this respect is granted him by the state."
The state being thus invested with the title to animals
*ferae naturae,* they cannot be lawfully captured by any
person without the express or implied permission of the
state.

4. The unrestricted taking from navigable streams, of
fish that are valuable for food, usually causes their exter-
mination, to prevent which, and to afford time and oppor-
tunity for an increase of the species, laws have been
passed limiting the time and manner, or temporarily pro-
hibiting, the catching of them, which enactments have
been upheld as legitimate exercises of the police power
employed by a state to protect the welfare of all its citi-
zens: Tiedeman, State & Fed. Control, § 124. No person
has an absolute property in migratory fish, when swim-
ming in the navigable waters of a state, and hence a
statute prohibiting the taking of them does not trans-
gress any constitutional provision, for the right to fish
is at best only a privilege, which the state may grant or
withhold at its pleasure: Id. § 151. "The police power,"
says a text-writer, "is the power to restrain common
rights of liberty or property. When it is sought to exer-
cise rights which are not common or fundamental, still

more when special privileges are asked, the state may grant the required permit or license upon such conditions as it pleases, without observing the limitations which otherwise hedge about the exercise of the police power. The restrictions upon the exercise of corporate rights afford the most conspicuous illustration of this; others are found in fish and game laws and others in cases of qualified property": Freund, Police Power, § 24.

We think it conclusively appears, from the authorities thus adverted to, that the title to fish taken from navigable streams is held by favor of the state (*State* v. *Schuman,* 36 Or. 16: 58 Pac. 661: 47 L. R. A. 153: 78 Am. St. Rep. 754), and that no person has a right to acquire such property in any manner he pleases, as is intimated by a learned author (Tiedeman's Police Power, § 135). The taking of salmon by any means could be prohibited for a reasonable time, at least, in order to permit the number of such fish to be augmented by a propagation of the species, or the state might lawfully demand such a sum of money for the privilege of pursuing any branch of the business as would be equivalent to prohibition. As illustrating this principle, a text-writer, referring to the sale of intoxicating drinks, says: "By making the license fee or tax sufficiently high, even the system of granting licenses as a matter of right may be used as a means of restricting the liquor traffic": Freund, Police Power, § 206. Fish must be caught before they can be canned, and any legislation that tends to restrict the canning of salmon necessarily limits the number of such fish that will be taken, for the chief demand for salmon is for canning purposes, and a statute that circumscribes the demand necessarily diminishes the supply.

We believe the act under consideration is valid, and, this being so, no error was committed in overruling the demurrer.

Other errors are assigned, but, deeming them unimportant, the judgment is affirmed.          AFFIRMED.