Argued May 4; affirmed June 21, 1949

# FIELDS *v.* WILSON
207 P. 2d 153

*Charles R. Cater,* of La Grande, argued the cause and filed a brief for appellants.

*Rex Kimmell,* Assistant Attorney General, of Salem, argued the cause for respondents. With him on the brief was George Neuner, Attorney General, of Salem.

Before Lusk, Chief Justice, and Brand, Rossman and Bailey, Justices.

LUSK, C. J.

The plaintiffs brought this suit to enjoin the defendants, members of the Oregon State Game Commission, the State Game Supervisor, and others, designated as trappers, from carrying out a program in which they are engaged in taking and trapping beaver and disposing of their pelts.

The defendants demurred to the second amended complaint on the following grounds: That the plaintiffs are without legal capacity to sue; defect of parties defendant; and insufficient facts.

The court sustained the demurrer and entered a decree dismissing the suit. Plaintiffs appeal.

The second amended complaint (hereinafter referred to as the complaint) is too long to be set out in full. Its allegations may be summarized as follows: Plaintiffs are citizens of the United States, and citizens and residents and taxpayers of the State of Oregon and of Union County therein. They hold licenses issued by the State Game Commission to hunt, fish and trap game, game fish and fur-bearing animals within the State of Oregon during the open seasons thereof, and earn part of their livelihood in the taking and trapping of fur-bearing animals. They have leases and permissive rights from land owners giving them the right to enter upon such lands for the purpose of trapping fur-bearing animals, including beaver, when they may be legally taken, and the right to trap fur-bearing animals upon all the navigable waters of the State of Oregon. The defendants officers, that is, the members of the Game Commission and the State Game Supervisor, have hired and given the exclusive right to the defendants trappers and to other trappers unknown to the plaintiffs, to take and trap beaver along the streams and rivers of the State, and such trappers have been taking and trapping beaver and turning the pelts over to the defendants officers and receiving for their services from the Oregon Game Fund monthly salaries of $175.00 each. The defendants officers sell the pelts of such beavers to fur buyers and fur dealers and pay a percentage of the proceeds of such sales to the defendants trappers, and likewise a percentage thereof to the owners of lands from which such beaver are trapped, the balance of such proceeds being devoted to purposes unknown to the plaintiffs.

These acts of the defendants officers in granting exclusive trapping privileges to the defendants trappers and others are alleged to violate Art. I, § 20, of the Constitution of the State of Oregon, Title 82, O. C. L. A., and the Fourteenth Amendment of the Constitution of the United States, and their disposing of the beaver pelts and the proceeds thereof in the manner stated are alleged to violate Art. I, § 20, of the State Constitution and Title 82, O. C. L. A. The threatened continuance of such unlawful acts is alleged and that plaintiffs will be irreparably damaged thereby.

It is further alleged that the right to take and trap beaver belongs exclusively to all the inhabitants of the State, that the defendant officers claim to be acting under § 82-348, O. C. L. A., and are harvesting the entire annual crop of beaver in the State of Oregon, and, if the said program of trapping is continued, "the plaintiffs will suffer irreparable damage to a valuable property right as above described and the numbers of beaver will never be allowed to increase to the point where a regular open season for the trapping of beaver for their pelts could be established"; that plaintiffs have demanded of the defendants officers that permits for the taking of beaver under the provisions of § 82-348, O. C. L. A., be issued on a basis of equality so that the plaintiffs and all the trappers of the State of Oregon may have an equal and fair chance to trap beaver, but such demand has been refused; and that the plaintiffs bring the suit for the benefit of themselves as well as for the benefit of all trappers, taxpayers, citizens and inhabitants of the State of Oregon who are accustomed to take and trap fur-bearing animals during the open season. It is further alleged that if the said program of trapping had not been followed "the beaver in Oregon would be numbered

as the sands of the sea'', and regular open seasons for the trapping thereof could be enjoyed by the plaintiffs and other citizens and inhabitants of the State of Oregon equally.

The prayer is for an injunction restraining the further continuance of the alleged unlawful acts.

The statute under which, according to the complaint, the defendants are pretending to act, § 82-348, O. C. L. A., reads as follows:

"It shall be unlawful at any time to take, possess, transport, sell, offer for sale, or to purchase beaver pelts or any beaver or part or parts thereof; provided, however, that the state game supervisor is authorized, after investigation, to cause to be taken, under his supervision, as many beaver as he deems necessary for the protection of property. Pelts of beaver upon being inspected, marked and tagged by the state game supervisor may be possessed and sold at any time.''

We are not clear as to just what plaintiffs consider to be the meaning of this statute if it is not to be construed as the officers charged with the enforcement of the game laws appear to have construed it. Plaintiffs say in their brief that it is their position that "the statute in question does not direct or empower the state through its officials to take any beaver''. They refer to succeeding sections which require a permit from the Game Commission to ship beaver out of the State, and provide the manner in which beaver shall be marked, tagged and shipped, and to the omission of any statutory provision concerning the disposition of the moneys derived by the commission from the sale of beaver pelts. They argue that "the only explanation of these various statutory directions is that the Legislature contemplated that all beaver would

be taken by private individuals in the same manner that other wild animals are taken for food and fur." "The statute", they say, "does not require that the Game Commission or the State Game Supervisor hire trappers, kill beaver and sell hides therefrom for sums of money which would doubtless be considerable. All excess beaver could and should be taken by private citizen trappers in much the same way as excess elk, deer and other game animals are harvested by sportsmen each year." Attention is then called to § 7 of Ch. 165, Oregon Laws, 1945, which authorizes the Game Commission, when it shall find that only a limited number of any species or kinds of game animals or of either sex thereof, may be hunted, trapped, pursued or killed, to make a regulation providing for the issuance of special hunting tags to licensed hunters in the order in which they apply for such tags, etc. It is not claimed, however, that the commission has made any such regulation with reference to beaver; and it is somewhat difficult for us to understand how the commission could be said to have that authority in view of the very plain language of the first clause of § 82-348, O. C. L. A.

The only right of the plaintiffs to take and trap beaver asserted in the complaint is the right to do so in the open season. The complaint clearly implies that there is no such open season, and counsel for plaintiff admitted on the argument that there has been none since 1935.

Although the complaint alleges that the plaintiffs have demanded of the commission and the supervisor that "permits for the taking of beaver under the provisions of Section 82-348, O. C. L. A., be issued on a basis of equality so that the plaintiffs and all the

trappers of the State of Oregon have an equal and fair chance to trap beaver, but that such demand has been refused'', no language of that or any other statute is pointed to as authorizing the issuance of such permits. And it is not the purpose of this suit to obtain any such permits but merely to enjoin the defendants from doing what they are doing, that is, hiring and paying certain trappers to take and trap beaver and giving them licenses for that purpose to the exclusion of the plaintiffs, and disposing of the pelts in the manner alleged. It is not suggested, and we are unable to see how it could be maintained, that if the relief asked for in the complaint were granted the plaintiffs would be in any better position than they are now. They would still have licenses to take and trap beaver, but there would still be no open season. If, as a result of halting the defendants in their alleged unlawful course beaver should, as the complaint alleges, ''be numbered as the sands of the sea'', so that open seasons could be established and everyone who desired might engage in taking and trapping beaver, still the opening of the season would depend upon action by the legislature. It would require repeal of § 82-348, O. C. L. A.

In our opinion that section calls for no construction, and in plain language authorizes the acts of which the plaintiff complains. Obviously, if the State Game Supervisor is to carry out his statutory duty ''to cause to be taken, under his supervision, as many beaver as he deems necessary for the protection of property'', he must hire trappers to do the job and compensate them for their services. We see no merit whatever in the argument that the provisions of other sections regarding the inspection, tagging and shipping of beaver pelts warrant a different construction.

■■ The plaintiffs say, however, that the statute as so construed in unconstitutional. In our opinion the court is without jurisdiction to consider that question in this suit. It is elementary, as Mr. Justice Rand said in *McLaughlin v. Helgerson,* 116 Or. 310, 314, 241 P. 50, that "equity deals only with civil and property rights, and, unless the act complained of amounts to an invasion of one or the other of these, a court of equity has no jurisdiction to restrain any act whether done in the enforcement of an invalid statute or otherwise." See, also *Winslow v. Fleischner,* 110 Or. 554, 561, 223 P. 922; *Friendly v. Olcott,* 61 Or. 580, 586-587, 123 P. 53; *State ex rel v. Lord,* 28 Or. 498, 527-528, 43 P. 471, 31 L. R. A. 473; 28 Am. Jur., Injunctions, 458, § 282. There is no question here of civil rights, and the only alleged property right is that derived from the plaintiffs' licenses to trap fur-bearing animals in the open season. But, as there is concededly no open season on beaver, the privileges under these licenses do not constitute a property right so far as the taking and trapping of beaver is concerned. Nor is there any allegation in the complaint that the plaintiffs' taxes are increased by the actions of the defendants so as to bring the case within the rule enunciated in *Morris v. Salem,* 179 Or. 666, 679, 174 P. (2d) 192; *McKinney v. Watson,* 74 Or. 220, 223, 145 P. 266, and other like cases.

■ Beaver are animals *ferae naturae,* "and while in a state of freedom their ownership, so far as a right of property can be asserted, is in the state, not as a proprietor, but in its sovereign capacity for the benefit of and in trust for its people in common". *Monroe v. Withycombe,* 84 Or. 28, 334, 165 P. 227. They cannot be captured by anyone without express or implied permission of the State. *State v. Hume,* 52 Or. 1, 6, 95 P.

808. In Oregon the ownership of the State in wild game and fur-bearing animals and the rights of persons therein are thus defined by statute:

"(a) No person shall at any time or in any manner acquire any property in, or subject to his dominion or control, any of the wild game animals, furbearing animals, game birds, nongame birds or game fish, or any part thereof, of the state of Oregon, but they shall always and under all circumstances be and remain the property of the state, except that by killing, catching or taking the same in the manner and for the purpose herein authorized and during the period not herein prohibited, the same may be used by any person at the time, and in the manner, and for the purpose herein expressly provided. Any person hunting or trapping for or having in possession any game animals, furbearing animals, game birds, nongame birds, or game fish at any time in any manner shall be deemed to consent that the title shall be and remain in the state for the purpose of regulating the use and disposition of the same, and such possession shall be deemed the consent of such person aforesaid, whether said animals, birds or fish were taken within or without the state.

"(b) Provided, however, that any trophy or game animal or bird sold pursuant to a permit of the state game commission shall become the property of the person buying same." § 82-201, O. C. L. A.

There is no suggestion that this statute is unconstitutional. The authorities say:

"The right to kill game is a boon or privilege granted, either expressly or impliedly, by the sovereign authority, and is not a right inhering in any individual. Consequently, nothing is taken from the individual, and his constitutional rights are not infringed when he is denied the privilege or when limitations are placed on the killing or marketing of

game." 24 Am. Jur., Game and Game Laws, 382, § 10.

■ It is true that "the privilege of hunting animals or fowls, wild by nature and fit for food, is a property right." *Winslow v. Fleischner,* supra, 110 Or. at p. 563; *Bingham v. Salene,* 15 Or. 208, 213, 14 P. 523, 3 Am. St. Rep. 152. But it is a right "subject to the game laws of the state." *Winslow v. Fleischner,* supra.; 27 C. J., Game, 942, § 3, 38 C. J. S., Game, § 3, page 3. And the distinction between this case and the decision on which the plaintiffs rely (*Bingham v. Salene, Monroe v. Withycombe and Winslow v. Fleischner*) is clear. The Bingham case holds that the grant by an owner of land to another of the privilege of going upon the land to kill wild ducks and other wild fowl is a grant of a *profit a prendre*—of an interest in the land itself. In the Monroe case the property right which was asserted and vindicated was based upon the present enjoyment by the holders of licenses issued by the state of the privilege of taking salmon in the Columbia River with seines and gill nets. An order of the master fish warden, the effect of which was to give one of the defendants the exclusive right to fish, was held invalid. The right of fishing in a navigable stream in Oregon was said to be "free and common to all the citizens of the state," though "in the exercise of its police power and for the welfare of all its citizens the state can regulate or even prohibit the catching of fish." In the Winslow case the plaintiff had a license to hunt deer, and was held to have a property right in hunting which entitled him to invoke the equitable jurisdiction of the court against an alleged unlawful and unauthorized order of the State Game Commission affecting his enjoyment of the right. In the Bingham case the right of

the State to prohibit the killing and taking of game was neither involved nor discussed. In the other two cases the present right to exercise the particular privilege involved existed, whereas, in the instant case, the right to trap beaver, which the plaintiffs claim for themselves, does not exist, because the State has withdrawn it.

It is apparent from many of the allegations of the complaint, as well as from the character of the argument made to support it, that the real object of this suit is not to protect a property right of the plaintiffs, but to use the injunctive process as a means of changing the legislative policy for controlling the activities of the industrious, if at times destructive, beaver, and substituting in its place a system which, in the plaintiffs' view, is more equitable and beneficial to the people of the State. Manifestly, the powers of a court of equity cannot be invoked for the accomplishment of such a purpose.

For the foregoing reasons we are of the opinion that the Circuit Court was right in sustaining the demurrer to the complaint, and the decree of dismissal is therefore affirmed.