Submitted April 25, affirmed December 18, 2013, petition for review allowed May 30, 2014 (355 Or 567)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LAWRENCE BEN ALLEN DICKERSON,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI092911; A147467

317 P3d 902

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Stephanie L. Striffler, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Duncan, Judge, and Nakamoto, Judge.

DUNCAN, J.

## DUNCAN, J.

In this criminal case, defendant appeals his conviction for second-degree criminal mischief, ORS 164.354,[1] arguing that the state failed to prove that he intentionally damaged the "property of another," ORS 164.305(2).[2] Defendant was charged with damaging the property of the state, and he was convicted based on evidence that he aided and abetted his son in shooting two state-owned deer decoys, which they believed were wild deer. Defendant argues that wild deer are not the property of the state; in defendant's view, wild deer are not the property of any person or entity. Defendant further argues that, because he and his son believed that the decoys were wild deer, the state failed to prove that they intentionally damaged the property of the state. As explained below, we conclude that, for the purposes of the criminal-mischief statute, wild deer are the property of the state. Therefore, we affirm.

We begin with the facts, which we state in the light most favorable to the state. *State v. McDonnell*, 313 Or 478, 480, 837 P2d 941 (1992). At approximately 7:45 p.m. on October 7, 2009, defendant was driving home in his truck with his son after deer hunting. Because it was more than one half of an hour past sunset, it was too late in the day to legally hunt deer.

State police officers had placed two deer decoys near a road to test public compliance with hunting laws. When

---

[1] ORS 164.354 provides, in relevant part:

"(1) A person commits the crime of criminal mischief in the second degree if:

"* * * * *

"(b) Having no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages property of another, or, the person recklessly damages property of another in an amount exceeding $100."

When defendant committed his crime, the operative statute was ORS 164.354 (2009). That statute has since been amended in ways that are immaterial to our analysis. Or Laws 2009, ch 16, § 5. Accordingly, we refer to the current version of ORS 164.354 throughout this opinion.

[2] ORS 164.305(2) provides, "'Property of another' means property in which anyone other than the actor has a legal or equitable interest that the actor has no right to defeat or impair, even though the actor may also have such an interest in the property."

defendant came upon the decoys, he stopped his truck and turned it toward the decoys. Defendant's son got out of the truck and fired two shots, using two different rifles. An officer stationed near the decoys approached defendant and his son and ordered them to stay where they were, but they drove away. The officer radioed a second officer stationed further down the road, and that officer stopped defendant's truck. Defendant's son admitted firing the two shots, and defendant admitted that he owned the rifles that his son had fired.

The state charged defendant with attempting to take a wildlife decoy, ORS 496.996 and ORS 161.405, use of unlawful hunting methods, ORS 498.002, and second-degree criminal mischief, ORS 164.354.[3] The count alleging second-degree criminal mischief charged defendant with "unlawfully and intentionally damag[ing] *a wildlife decoy* the property of The State of Oregon, *by shooting the decoy in the head*[.]" (Emphases added.) At trial, the state moved to strike the references to the wildlife decoy. The trial court granted the motion, over defendant's objection. Prior to allowing the amendment, the trial court stated, "[Y]ou can strike what the property is, all that matters is that it's something belonging to the State of Oregon[.]" Defendant has not challenged the amendment on appeal.

After the state presented its evidence, defendant moved for judgment of acquittal on all three counts. Regarding the second-degree criminal mischief count, defendant argued that the state failed to prove that he had intended to take the "property of another," as required by ORS 164.354, because, in his view, wild deer become property only when they are reduced to physical possession. In response, the state argued that wild deer are the property of the state because wild animals that have not been reduced to physical possession are the property of the sovereign. The trial court denied defendant's motion, and the jury found defendant guilty of all three counts. This appeal followed.

On appeal, defendant challenges only his second-degree criminal mischief conviction, renewing his argument

---

[3] Defendant was also charged with spotlighting from a motor vehicle, ORS 498.146, but that charge was dismissed.

that wild deer are not the property of the state.[4] Defendant's argument presents a question of statutory interpretation. Accordingly, we begin our analysis by examining the text, context, and legislative history of the relevant statutes. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (describing methodology).

ORS 164.354 defines the crime of second-degree criminal mischief. It provides, in pertinent part, that a person commits that crime, "if * * * having no right to do so nor reasonable ground to believe that the person has such right, the person *intentionally damages property of another*[.]" ORS 164.354(1)(b) (emphasis added). "Property of another" is a statutory term of art specific to the state's criminal mischief and arson statutes. It is defined by ORS 164.305(2), which provides, "'Property of another' means property in which anyone other than the actor has a *legal or equitable interest* that the actor has no right to defeat or impair, even though the actor may also have such an interest in the property." (Emphasis added.) Thus, to prove that a defendant has committed second-degree criminal mischief, the state must prove, among other things, that the defendant intentionally damaged property in which someone else had a legal or equitable interest that the defendant had no right to defeat or impair. Neither the term "legal interest" nor "equitable interest" is defined by statute.

Defendant does not dispute that the state has an interest in wild deer; he acknowledges that the state has a sovereign interest in wild deer, but argues that a sovereign interest is not a "legal or equitable" interest for the purposes of the definition of "property of another" in ORS 164.305(2). In defendant's view, legal or equitable interests are limited to proprietary and possessory interests, and the state's sovereign interest in wild deer is neither a proprietary nor a possessory interest.

In support of his argument that wild deer are not the property of the state, defendant relies on *Simpson v.*

---

[4] We note that defendant's only argument on appeal is that wild deer are not the property of the state. Defendant has not challenged his conviction on the ground that no wild deer were damaged. Such a challenge would raise a question of transferred intent, which we do not address.

*Dept. of Fish and Wildlife*, 242 Or App 287, 304, 255 P3d 565 (2011), in which we construed ORS 498.002(1), which provides, "Wildlife is the property of the state." In *Simpson*, we held that, although the statute provides that wildlife is the "property" of the state, the state does not "own" wildlife in the "common sense of 'ownership.'" 242 Or App at 304. Instead, the state has a sovereign interest in wildlife. *Id.* As we explained in *Simpson*, that interest is rooted in English common law, under which, according to Blackstone, wildlife "'belonged not to the people in common but to the King.'" *Id.* at 299 (quoting *State v. Couch*, 196 Or App 665, 675, 103 P3d 671 (2004), *aff'd*, 341 Or 610, 147 P3d 322 (2006)).

The English view that the sovereign holds title to wildlife was adopted in America, including in Oregon. *Simpson*, 242 Or App at 299; *see Couch*, 196 Or App at 676 ("For the better part of two centuries, American courts routinely have cited Blackstone for the proposition that all property rights in animals *ferae naturae* lie in the sovereign, which rights were assumed by the colonies and, later, the states."). For example, in *State v. Hume*, 52 Or 1, 5, 95 P 808 (1908), the Supreme Court held that the state holds title to wild fish in trust for its citizens. The court stated,

> "It is a generally recognized principle that migratory fish in the navigable waters of a state, like game within its borders, are classed as animals *ferae naturae*, the title to which, so far as that claim is capable of being asserted before possession is obtained, is held by the state, in its sovereign capacity in trust for all its citizens * * *."

*Hume*, 52 Or at 5.

Because the state holds title to wildlife in trust for its citizens, in *Simpson*, we held that the state's property interest in wildlife is "not proprietary or possessory[.]" 242 Or App at 304; *see Anthony et al. v. Veatch et al.*, 189 Or 462, 487, 220 P2d 493 (1950), *appeal dismissed*, 340 US 923 (1951) (the state's property interest in wild fish is sovereign, not proprietary); *Monroe v. Withycombe*, 84 Or 328, 334-35, 165 P 227 (1917) ("Fish are classified as *ferae naturae*, and while in a state of freedom, their ownership, so far as a right of property can be asserted, is in the state, not as a

proprietor, but in its sovereign capacity for the benefit of and in trust for its people in common.").[5]

Although, as defendant points out, *Simpson* establishes that the state's sovereign interest in wildlife is not a proprietary or possessory interest, it does not answer the question this case presents. As mentioned, defendant asserts that the interests included within ORS 164.305(2)'s definition of the "property of another" are limited to proprietary and possessory interests. But, defendant provides no support for that assertion, and it is inconsistent with the legislative history of ORS 164.305(2). When originally enacted, that statute defined "property of another" as "property in which anyone other than the actor has a possessory or proprietary interest." ORS 164.305(2) (1971); Or Laws 1971, ch 743, § 141. However, in 1977, the legislature modified that definition by removing the phrase "possessory or proprietary interest" and replacing it with the phrase "legal or equitable interest that the actor has no right to defeat or impair, even though the actor may also have such an interest in the property." Or Laws 1977, ch 640, § 1. The change was intended to expand the types of property interests encompassed by the definition, to include, among other interests, security interests. Tape Recording, House Floor Debate, HB 2384, June 7, 1977, Tape 26, Side 1 (statement of Rep Ted Bugas); Tape Recording, Senate Floor Debate, HB 2384, July 4, 1977, Tape 55, Side 1 (statement of Sen Walt Brown).

Given the legislative history and the current text of the statute, the question this case presents is whether the state's sovereign interest in wild deer is a "legal or equitable interest." "Legal interest" and "equitable interest" are terms with well-defined legal meanings. *See Atkinson v. Board of Parole*, 341 Or 382, 387, 143 P3d 538 (2006) ("We give words of common usage their plain, natural, and ordinary meaning, and words that have a well-defined legal meaning are

---

[5] In other words, the state's ownership of wild animals is a "legal fiction." *Couch*, 196 Or App at 676 n 5; *see Toomer v. Witsell*, 334 US 385, 402, 68 S Ct 1156, 92 L Ed 1460 (1948) ("The whole ownership theory, in fact, is now generally regarded as but a fiction expressive in legal shorthand of the importance to its people that a State have power to preserve and regulate the exploitation of an important resource.").

given that meaning." (Internal quotation marks and brackets omitted.)). A legal interest is defined as "1. [a]n interest that has its origin in the principles, standards, and rules developed by courts of law as opposed to courts of chancery. 2. An interest recognized by law, such as legal title." *Black's Law Dictionary* 886 (9th ed 2009). An equitable interest is defined as "[a]n interest held by virtue of an equitable title or claimed on equitable grounds, such as the interest held by a trust beneficiary." *Id.* at 885.

As the definition states, legal interests include interests that have their origins in rules developed by courts of law, as opposed to courts of chancery. The state's sovereign interest in wild animals meets that definition. It is rooted in English common law, under which wild animals "belong[ed] to the King by his prerogative." *The Case of Swans*, (1592) 77 Eng Rep 435 (KB) 439. The King's "prerogative" was "a conjunction of property and sovereignty," Dale D. Goble, *Three Cases/Four Tales: Commons, Capture, the Public Trust, and Property in Land*, 35 Envtl L 807, 837 (2005), and it was enforced in English courts of law, including the King's Bench, *see, e.g., Bowlston v. Hardy*, (1597) 78 Eng Rep 794 (KB) 794 (finding no personal property rights in coney rabbits because "the Queen hath the royalty in such things whereof none can have any property").

In sum, although we recognize that the state does not have a proprietary or possessory interest in wild deer, the state's sovereign interest in wild deer falls within the broad definition of "legal interest." We conclude that wild deer are the "property of another," as that phrase is defined by ORS 164.305(2). Therefore, we reject the contrary argument offered by defendant in support of his motion for judgment of acquittal.

Affirmed.