822 March 12, 2015 No. 8

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

LAWRENCE BEN ALLEN DICKERSON,
*Petitioner on Review.*

(CC MI092911; CA A147467; SC S062108)

En Banc

On review from the Court of Appeals*

Argued and submitted October 9, 2014, at La Grande High School, La Grande, Oregon.

Erik Blumenthal, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Stephanie L. Striffler, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

BALDWIN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
   * Appeal from Deschutes County Circuit Court, Barbara Haslinger, Judge. 260 Or App 80, 317 P3d 902 (2013).

**BALDWIN, J.**

Oregon's criminal mischief statute, ORS 164.354, prohibits persons from intentionally damaging "property of another." The issue in this case is whether wild deer are "property of another" for purposes of that statute. Defendant was convicted of second-degree criminal mischief, ORS 164.354, after aiding and abetting his son to shoot two state-owned deer decoys that they believed to be deer. Defendant appealed his criminal mischief conviction, arguing that the trial court had erred in denying his motion for judgment of acquittal because wild deer do not become property until reduced to physical possession. The Court of Appeals affirmed defendant's conviction. *State v. Dickerson*, 260 Or App 80, 317 P3d 902 (2013). We granted review to determine whether wild deer are "property of another," as that phrase is used in ORS 164.354. For the reasons that follow, we affirm.

In reviewing a denial of a motion for judgment of acquittal, we describe the relevant facts and all reasonable inferences that may be drawn from those facts in the light most favorable to the state. *State v. Walker*, 356 Or 4, 6, 333 P3d 316 (2014). As part of an operation to test compliance with hunting laws, two state troopers set up a pair of deer decoys near the side of a highway. More than half of an hour past sunset and therefore past legal hunting hours, defendant and his son were driving home in defendant's truck after a day of hunting. When defendant's son saw the two decoys, he told his father to stop the truck. Defendant angled his truck toward the decoys and stopped. Defendant's son got out of the truck and, using defendant's rifles, fired two shots at the decoys, damaging both of them. The troopers observed the conduct and stopped defendant and his son. Defendant's son admitted that he had fired both shots, and defendant admitted that he owned the rifles that his son had used.

As a result of that incident, the state charged defendant with attempting to take a wildlife decoy, ORS 496.996[1]

---

[1] ORS 496.996(1) provides that a person commits the crime of unlawful taking of wildlife if:

and ORS 161.405;[2] use of unlawful hunting methods, ORS 498.002;[3] and second-degree criminal mischief, ORS 164.354.[4] On the criminal mischief count, the information originally charged defendant with "unlawfully and intentionally damag[ing] *a wildlife decoy*[,] the property of The State of Oregon, *by shooting the decoy in the head*, the said defendant having no right to do so nor reasonable grounds to believe that the defendant has such right." (Emphasis added.)[5] At trial, the state pursued the theory that defendant had aided and abetted his son in shooting two deer decoys that belonged to the state and that defendant and his son had believed to be actual deer.

After the state had presented its evidence, defendant moved for a judgment of acquittal on all counts. On the criminal mischief count, defendant argued that no reasonable trier of fact could find that he had intended to damage a wildlife decoy. The court suggested that the state amend the charge to strike the references to the decoys, stating, "[Y]ou can strike what the property is, all that matters is that it's something belonging to the State of Oregon, I think." Defendant responded that, even if the charge were so amended, the state had failed to prove that wild deer are "property of another" for purposes of the intent element of the criminal mischief statute. Specifically, he argued that wild deer may become property only after being reduced to physical possession. The state countered that all wildlife is the property of the sovereign and therefore is "property

---

"(a) The person discharges a firearm or other hunting device, traps, or acts toward a wildlife decoy in any manner consistent with an unlawful taking of wildlife; and

"(b) The wildlife decoy is under the control of law enforcement officials."

[2] ORS 161.405 provides, in part, "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1).

[3] ORS 498.002 provides, in part, "No person shall *** hunt *** or assist another in *** hunting *** any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto." ORS 498.002(1).

[4] ORS 164.354 provides, in part, that a person commits the crime of second-degree criminal mischief if, "[h]aving no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages property of another[.]" ORS 164.354(1)(b).

[5] The state also charged defendant with spotlighting from a motor vehicle, ORS 498.146, but that charge was dismissed before trial.

of another." The trial court denied defendant's motion for judgment of acquittal. The state later moved to amend the information to strike the references to the decoys, and the court granted the motion, over defendant's objection. Thus, the amended information charged defendant with second-degree criminal mischief on the ground that he had "unlawfully and intentionally damage[d] property of The State of Oregon, the said defendant having no right to do so nor reasonable grounds to believe that the defendant has such right."[6] A jury thereafter found defendant guilty of all charges.[7]

Defendant appealed his criminal mischief conviction, and the Court of Appeals affirmed.[8] *Dickerson*, 260 Or App at 81. In considering whether the state had proved that defendant acted with intent to damage the "property of another," the court examined the text, context, and legislative history of ORS 164.305(2), which defines the phrase "property of another" for purposes of the criminal mischief statute. *Dickerson*, 260 Or App at 83 (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)). The court noted that, under a prior version of ORS 164.305(2), the legislature had defined "property of another" as "property in which anyone other than the actor has a *possessory or proprietary interest.*" *Id.* at 85 (citing Or Laws 1971, ch 743, § 141) (emphasis added). However, the legislature amended that statutory definition in 1977. *Id.* (citing Or Laws 1977, ch 640, § 1). Thus, the current version of ORS 164.305(2) provides:

> "'Property of another' means property in which anyone other than the actor has a *legal or equitable interest* that

---

[6] Defendant did not challenge that amendment on appeal.

[7] Defendant did not appeal his conviction for attempting to take a wildlife decoy, ORS 496.996 and ORS 161.405, or for using unlawful hunting methods, ORS 498.002.

[8] Defendant's conviction was based on the fact that his son had intended to damage wild deer but instead damaged a wildlife decoy. Defendant did not challenge the criminal mischief conviction on the basis that no wild deer were damaged. *See* Wayne R. LaFave, 1 *Substantial Criminal Law* § 5.2(c), 348-50 (2d ed 2003) (discussing disparity between intended and actual result). As noted, defendant's only argument on appeal was that wild deer are not the property of the state for purposes of the intent element of the crime. *See Dickerson*, 260 Or App at 83 n 4.

the actor has no right to defeat or impair, even though the actor may also have such an interest in the property."

(Emphasis added.) Tracing the historical development of the state's interest in wildlife to determine whether it is a "legal or equitable interest," the court concluded that the state has a "sovereign interest" in wildlife. 260 Or App at 84-85. The court then considered the definitions of "legal interest" and "equitable interest" in *Black's Law Dictionary*, and concluded that "the state's sovereign interest in wild deer falls within the broad definition of 'legal interest.'" *Id*. at 86.

We allowed defendant's petition for review to resolve the question whether wild deer are "property of another," as that phrase is used in Oregon's criminal mischief statute. As a threshold matter, however, the state argues that we need not reach that issue. Rather, the state contends that, regardless whether wild deer are property of the state, a rational trier of fact still could have found the essential elements of criminal mischief beyond a reasonable doubt. *See State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998) (providing standard for reviewing sufficiency of the evidence). In that regard, the state offers two alternative bases to affirm the judgment. In particular, the state argues that a rational trier of fact could have found that it proved the intent element of the crime by proving either that (1) defendant intended to shoot at two deer decoys; or (2) defendant intended to shoot at wild deer that did not belong to him and that he believed that he had no right to damage. In effect, the state requests this court to exercise its discretion to affirm the judgment on an alternative basis under the "right for the wrong reason" doctrine. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (as matter of discretion, reviewing court may affirm ruling of lower court on an alternative basis if facts support alternative basis, alternative view of evidence is consistent with trial court's ruling, and record would not have developed in materially different way had prevailing party raised alternative basis below).

The state's first argument—that defendant intended to shoot at decoys that were property of the state—relies on a different factual theory from that pursued by the state

at trial. At trial, the state consistently argued that defendant and his son had shot at two deer decoys that they had believed to be actual deer. For example, when defendant moved for a judgment of acquittal on the count of attempting to take a wildlife decoy, he insisted that the state was required to prove that defendant knew that the decoys were decoys, not live deer. The trial court disagreed, reasoning that requiring the state to so prove would be "an absurd way to interpret [that] statute." In moving for a judgment of acquittal on the count of use of unlawful hunting methods, defendant argued that he could not have hunted deer outside the prescribed hours because no deer had actually been present. The prosecutor responded, "[T]hey're hunting *deer*. I mean, that's the circumstantial evidence in this case." (Emphasis added.) During closing argument, the prosecutor argued that the evidence showed that defendant had positioned his "vehicle to get the light on the decoy, to allow [his son] to hunt after hours and shoot *what they believe are deer*." (Emphasis added.) On review, the state does not point to any evidence in the record that would support its alternative theory that defendant and his son intended to shoot decoys rather than live deer. Instead, the state speculates that a "trier of fact could conclude that defendant and his son, frustrated after a fruitless day of hunting, shot at the decoys just for the sake of shooting *** or even that they determined to engage in some target practice." Because we conclude that the facts in the record do not support the state's first alternative basis for affirmance, and further that the record might have developed differently had the state raised that theory below, we decline to exercise our discretion to affirm the judgment on that basis.

      We likewise decline to affirm based on the state's second argument—that a reasonable trier of fact could have found that defendant intended to shoot wild deer that did not belong to him and that he believed that he had no right to damage. The state argues that whether wild deer are property of the state is irrelevant because the state was not required to prove *whose* property defendant intended to damage. Rather, the state contends that, "[r]egardless of what exactly defendant believed he was shooting, and regardless of who as an abstract legal matter owns the

thing that defendant believed he was shooting, the evidence sufficed to support an inference that defendant intentionally shot something that he knew was not his, and that he believed he had no right to shoot."

We disagree that that evidence is sufficient to support a conviction for second-degree criminal mischief on that basis. Under ORS 164.354(1)(b), a person commits second-degree criminal mischief if, "[h]aving no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages *property of another.*" (Emphasis added.) To the extent that the state argues that the jury needed to find only that defendant had aided and abetted his son in shooting at deer that his son believed that he did not have a right to shoot, the state reads out of the statute the requirement that defendant shot at "property of another"—a phrase that has a specific, statutorily prescribed meaning. To the extent that the state argues that the jury needed to find only that defendant intentionally had shot at deer that he believed did not belong to him, the state's argument begs the question of whether wild deer are "property of another." Defendant's central argument is that wild deer are not the property of anyone until reduced to capture. For that reason, we find it necessary to resolve the issue whether wild deer are the property of another for purposes of the criminal mischief statute. Thus, we decline the state's invitation to affirm the judgment below on an alternative basis. *See Outdoor Media Dimensions Inc.*, 331 Or at 659-60 (appellate court may, in its discretion, affirm on alternate grounds).

We turn now to the question presented on review—whether wild deer are "property of another" for purposes of the criminal mischief statute. The state argues that wild deer are the property of the state and, thus, "property of another" as that phrase is used in ORS 164.354(1)(b). Defendant agrees that the state has a sovereign interest in wild animals but argues that a sovereign interest is regulatory, not proprietary, in nature. He further argues that the legislature intended the phrase "property of another," as used in the criminal mischief statute, to refer to more common types of property interests, rather than an interest held by the state by virtue of its sovereignty.

Because defendant's argument presents an issue of statutory interpretation, we consider the statute's text, context, and any relevant legislative history to discern the meaning of "property of another" as intended by the legislature when it defined that term in ORS 164.305(2) and incorporated it as an element of the crime of criminal mischief in ORS 164.354(1)(b). *Gaines*, 346 Or at 171-73. We begin with the text of the statutes at issue.

A person commits the crime of second-degree criminal mischief if, "[h]aving no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages property of another." ORS 164.354(1)(b). "Property of another" means "property in which anyone other than the actor has a legal or equitable interest that the actor has no right to defeat or impair, even though the actor may also have such an interest in the property." ORS 164.305(2).

The legislature did not define the terms "legal interest" or "equitable interest" as used in ORS 164.305(2). When the legislature does not provide a definition of a statutory term, we ordinarily look to the plain meaning of the statute's text to determine what particular terms mean. *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295, 337 P3d 768 (2014). Because "legal interest" and "equitable interest" are legal terms, however, we give those terms their established legal meanings, consulting legal dictionaries as an aid in determining those meanings. *See id.* at 296 (noting that, "when a term is a legal one, we look to its 'established legal meaning' as revealed by, for starters at least, legal dictionaries"); *Ann Sacks Tile and Stone, Inc. v. Dept. of Rev.*, 352 Or 380, 386, 287 P3d 1062 (2012) ("When the words in a statute have a well-defined legal meaning, we use that meaning in interpreting the statute."). At the time that the legislature enacted the current version of ORS 164.305(2), *Black's Law Dictionary* defined an "interest" in property as "a right to have the advantage accruing from anything; any right in the nature of property, but less than title; a partial or undivided right; a title to a share." *Black's Law Dictionary* 950 (4th ed 1968). "Legal" was defined as "[p]roper or sufficient to be recognized by the law; cognizable in the

courts; competent or adequate to fulfill the requirements of the law." *Id.* at 1038. "Equitable" was defined as "[e]xisting in equity; available or sustainable only in equity, or only upon the rules and principles of equity." *Id.* at 632. Although those dictionary definitions provide some guidance, they do not clearly identify the bounds of what constitutes a legal or equitable interest for purposes of determining whether the state's sovereign interest in wildlife fits within those bounds.

However, the enactment history of ORS 164.305(2) is instructive. *See State v. Ziska / Garza*, 355 Or 799, 806, 334 P3d 964 (2014) (contextual analysis of statute may include prior versions of the statute). When ORS 164.305(2) was originally enacted in 1971, it defined "property of another" as "property in which anyone other than the actor has a possessory or proprietary interest." Or Laws 1971, ch 743, § 141(2). In 1977, the legislature amended the statute, removing the phrase "possessory or proprietary interest" and replacing it with the much broader phrase "legal or equitable interest that the actor has no right to defeat or impair, even though the actor may also have such an interest in the property." Or Laws 1977, ch 640, § 1(2).

Defendant acknowledges that the 1977 amendments to ORS 164.305(2) broadened the definition of "property of another," but he argues that the legislature did not intend to expand the definition beyond commonly recognized property ownership categories. Rather, he contends that the legislature intended to broaden the definition to include only security interests. Our review of the legislative history confirms defendant's contention that, when the legislature undertook to amend the definition of "property of another"—which is used in both the criminal mischief and the arson statutes— it intended, at least in part, to allow for certain prosecutions for arson. The prior definition of "property of another" did not encompass instances where a person burned his or her own residential or commercial property to collect insurance proceeds. For example, even where a lender held a security interest in a piece of property that a borrower burned, or a husband and wife shared an equitable interest in a piece of property that one of them burned, the state was unable, in some instances, to prosecute the crime as arson, because

those interests were not "possessory or proprietary" interests. *See, e.g.*, Tape Recording, House Subcommittee on Judiciary, HB 2384, Mar 15, 1977, Tape 19, Side 1 (statement of James Ayers, State Police Arson Division) (explaining that prosecutors would not bring charges in cases where bank holds mortgage on piece of destroyed property, because bank was not an owner of that property); Tape Recording, House Committee on Judiciary, HB 2384, May 23, 1977, Tape 60, Side 1 (statement of Gary Rusher, Legal Counsel for Oregon Fire Chiefs Association) (describing proposed amendment to definition of "property of another" as addressing situation where husband and wife each have an equitable interest in property and one of them "torches" that property).

We disagree, however, with defendant's assertion that the 1977 amendment to ORS 164.305(2) essentially redefined "property of another" to mean only that property in which a person other than the actor has a possessory, proprietary, or security interest.[9] Nothing in the statutory text indicates that the legislature intended to limit the definition of "property of another" to those three specific categories. As this court has stated:

> "The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention. * * * When the express terms of a statute indicate such broader coverage, it is not necessary to show that this was its conscious purpose. In the absence of an affirmative showing that the narrower meaning actually was intended by the drafters, we shall take the legislature at its word and give [the term] its ordinary meaning."

*South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986) ("The term 'watercraft' is expansive, and its plain and ordinary meaning necessarily includes pleasure boats."). Here, the legislature redefined "property of another" in broad terms to include anyone with a "legal or equitable interest" that the defendant has no right to defeat

---

[9] *Black's Law Dictionary* defined "security" as "[p]rotection; assurance; indemnification. The term is usually applied to an obligation, pledge, mortgage, deposit, lien, etc., given by a debtor in order to make sure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of failure in the principal obligation." *Id*. at 1522 (4th ed 1968).

or impair. We decline to interpret ORS 164.305(2) to include a limitation that does not appear in its plain text. *See also Gaines*, 346 Or at 172 ("[A] party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it.").

Our remaining inquiry, then, is whether the state's sovereign interest in wild deer fits within the broad parameters of the legislature's amended definition of "property of another." To answer that question, we consider Oregon's common-law and statutory understanding of the nature of the state's sovereign interest in wild animals. *See State v. Pipkin*, 354 Or 513, 526, 316 P3d 255 (2013) (noting that "context includes the preexisting common law and the statutory framework within which the law was enacted") (internal quotation marks omitted).

In *State v. Hume*, 52 Or 1, 5-6, 95 P 808 (1908), this court adopted the English common-law view that property rights in wild animals lie in the sovereign.[10] The court employed, as had courts in many other states, the metaphor of a trust to describe the state's interest in wildlife. The court concluded that title to animals, "so far as that claim is capable of being asserted before possession is obtained, is held by the state, in its sovereign capacity in trust for all its citizens[.]" *Id.* at 5; *see also Anthony et al. v. Veatch et al.*, 189 Or 462, 487, 220 P2d 493 (1950) ("'The fish in the waters of the state, and the game in its forests, belong to the people of the state, in their sovereign capacity[.]'") (quoting *State v. Tice*, 69 Wash 403, 404, 125 P 168 (1912)). This court later affirmed that, although a "right of property," the state's interest in wildlife is a sovereign—not a proprietary—interest. *See Monroe v. Withycombe*, 84 Or 328, 334-35, 165 P 227 (1917) ("Fish are classified as *ferae naturae*, and while in a state of freedom their ownership, so far as a right of property can be asserted, is in the state, *not as a proprietor, but in its sovereign capacity* for the benefit of and in trust for

---

[10] Common-law principles pertaining to wildlife regulation have a rich history, dating back to ancient Rome. In England, the understanding that undomesticated animals were held in common by the people gradually gave way to the view that wild animals belonged to the King. For discussions of that historical development in the law, *see State v. Couch*, 196 Or App 665, 673-77, 103 P3d 671 (2004), *aff'd*, 341 Or 610, 147 P3d 322 (2006), and *Simpson v. Dept. of Fish and Wildlife*, 242 Or App 287, 298-300, 255 P3d 565 (2011).

its people in common[.]") (emphasis added); *accord Fields v. Wilson*, 186 Or 491, 498, 207 P2d 153 (1949).[11]

Oregon codified the state's property interest in wildlife as section 39-201, Oregon Code 1930. That statute provided, in part, that wild animals "shall always and under all circumstances be and remain the property of the state." Oregon Code, title XXXIX, ch II, § 39-201 (1930). That statutory concept remained substantively the same until the 1973 Legislative Assembly enacted ORS 498.002—the current statute declaring the state's property interest in wild animals. *See Simpson v. Dept. of Fish and Wildlife*, 242 Or App 287, 300-02, 255 P3d 565 (2011) (describing statutory history). ORS 498.002 provides, in part, "Wildlife is the property of the state." ORS 498.002(1). The Court of Appeals has interpreted that statute to incorporate the common-law understanding of the state's property interest in wildlife— that is, that "the state's property interest in wildlife is sovereign, not proprietary." *Simpson*, 242 Or App at 304.[12] We presume that, when the legislature amended the definition of "property of another" in 1977, it was aware of its prior declaration that the state has a property interest in wildlife and of the existing common law regarding the sovereign nature of that property interest. *See Moro v. State of Oregon*, 354 Or 657, 665-66, 320 P3d 539 (2014) ("In interpreting statutes, this court presumes that the legislature is aware of existing law and this court's interpretation of that law.").

The dispositive issue, then, is whether the state's sovereign interest is a "legal or equitable interest," such that wild animals are "property of another" under ORS 164.305(2). Defendant argues that the state's sovereign

---

[11] Indeed, the United State Supreme Court has recognized that states do not "own" wild animals in the traditional sense of ownership and that the concept of state ownership is a legal fiction. *See Toomer v. Witsell*, 334 US 385, 402, 68 S Ct 1156, 92 L Ed 1460 (1948) ("The whole ownership theory, in fact, is now generally regarded as but a fiction expressive in legal shorthand of the importance to its people that a State have power to preserve and regulate the exploitation of an important resource.").

[12] As the Court of Appeals noted in *Simpson*, 242 Or App at 302, the legislative history supports the conclusion that the legislature did not intend substantively to change the nature of the state's property interest in wildlife when it enacted ORS 498.002. *See, e.g.*, Minutes, Senate Committee on Agriculture and Natural Resources, HB 2010, June 6, 1973, 2 (statement of Rep Roger Martin) (noting that the bill was not intended "to make substantive changes").

interest enables it to exercise regulatory authority over wildlife, but that its regulatory authority does not constitute a "legal or equitable interest." The state counters that its interest in wildlife is broader than its authority to regulate the conduct of its citizenry with respect to wild animals. Rather, the state contends that it also holds title to wildlife as a trustee and therefore has a legal interest in wildlife. *See Anthony et al.*, 189 Or at 474 (recognizing that the state may regulate the capture of wildlife "either in the exercise of its police power, or in its sovereign capacity in trust for its people"). For the reasons that follow, we agree that the state's sovereign interest in wild animals is in the nature of a "legal *** interest" within the meaning of ORS 164.305(2).

First, as discussed, the legislature has declared that "[w]ildlife is the property of the state." ORS 498.002(1); *see also* Oregon Code, title XXXIX, ch II, § 39-201 (1930) (providing that wild animals "shall always and under all circumstances be and remain the property of the state"). That declaration confirms that the state has a property interest in wildlife that is recognized by law.

Second, the state can obtain compensation for damage done to wildlife. *See, e.g.*, ORS 496.705 (providing that the state "may institute suit for the recovery of damages for the unlawful taking or killing of any of the wildlife referred to in subsection (2) of this section that are the property of the state"). The state's ability to bring an action for damages to wildlife also indicates that its property interest in wildlife is recognized by law and that it is enforceable in courts of law.

Finally, as explained, Oregon courts have long used the metaphor of a trust to describe the state's sovereign interest in wildlife. *Hume*, 52 Or at 5-6; s*ee Portland Fish Co. v. Benson*, 56 Or 147, 154, 108 P 122 (1910) (noting that title to wild animals, "before they are captured, is in the state in its sovereign capacity, in trust for all its citizens"). According to the trust metaphor—sometimes referred to as the "wildlife trust doctrine"—wildlife is the corpus of the trust, the state is the trustee, and the public is the beneficiary. *See, e.g.*, *Toomer v. Witsell*, 334 US 385, 399-400, 68

S Ct 1156, 92 L Ed 1460 (1948) (noting that, under the trust theory, the state acts as a trustee, the citizens are the beneficiaries, and the wildlife is the corpus); *Geer v. Connecticut*, 161 US 519, 534, 16 S Ct 600, 40 L Ed 793 (1896) ("[T]he ownership of the sovereign authority is in trust for all the people of the State, and hence by implication it is the duty of the legislature to enact such laws as will best preserve the subject of the trust and secure its beneficial use in the future to the people of the State."), *overruled on other grounds by Hughes v. Oklahoma*, 441 US 322, 99 S Ct 1727, 60 L Ed 2d 250 (1979). Although the trust metaphor is an imperfect one (for example, there is no trust instrument that delineates the terms of the trust), the state's powers and duties with respect to wildlife have many of the traditional attributes of a trustee's duties. Acting as a trustee, the state has the authority to manage and preserve wildlife resources and may seek compensation for damages to the trust corpus. *See, e.g.*, *Hume*, 52 Or at 5-6 (noting that, "as an incident of the assumed ownership, the legislative assembly may enact such laws as tend to protect the species from injury by human means and from extinction by exhaustive methods of capture"); *State v. Pulos*, 64 Or 92, 95, 129 P 128 (1913) ("[N]o person has an absolute property right in game or fish while in a state of nature and at large; * * * the taking of them is not a right, but is a privilege, which may be restricted, prohibited, or conditioned, as the law-making power may see fit.").

Defendant argues that, even if the state has a legal or equitable interest in wildlife, the legislature did not intend for wildlife violations to be prosecuted under criminal laws of general applicability. He asserts that the comprehensive nature of Oregon's wildlife code indicates a legislative intent to establish an administrative framework for regulating interactions between humans and wildlife. However, defendant cites no authority for the proposition that, in the absence of an explicit statement from the legislature, we may interpret the wildlife code to preclude criminal prosecution for intentional damage to wildlife. Instead, the legislature has broadened the criminal mischief statute to include damage intentionally done to any "property in which anyone other than the actor has a legal or equitable interest,"

without exception. ORS 164.305(2); ORS 164.354(1)(b). We therefore enforce that expressed intention.

In summary, when the legislature amended ORS 164.305(2) in 1977, it broadened the definition of "property of another." We assume that, at the time of the 1977 amendment, the legislature was aware of its prior declaration that the state has a property interest in wildlife. *See* ORS 498.002(1) (so declaring). We also assume that the legislature was aware of the existing common law regarding the sovereign nature of that property interest. Because the state, as a trustee, holds a legal interest in wildlife, we conclude that the state has a "legal *** interest" in wildlife, as that phrase is used in ORS 164.305(2). We therefore conclude that wild deer are "property of another," for purposes of ORS 164.354 (1)(b) and ORS 164.305(2), and that the trial court did not err in denying defendant's motion for judgment of acquittal on the second-degree criminal mischief count.[13]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[13] We note that the state need not prove under the criminal mischief statute that the state owns the property that is damaged. Under ORS 164.354(1)(b), it is sufficient that the state prove that the property damaged is "property of another."