Argued and submitted January 16, University of Oregon, Eugene,
reversed and remanded June 11, 2014

Olivia CHERNAIK,
a minor and resident of Lane County, Oregon;
Lisa Chernaik, guardian of Olivia Chernaik;
Kelsey Cascadia Rose Juliana,
a minor and resident of Lane County, Oregon;
and Catia Juliana, guardian of Kelsey Juliana,
*Petitioners-Appellants,*

*v.*

John KITZHABER,
in his official capacity as
Governor of the State of Oregon;
and State of Oregon,
*Respondents-Respondents.*

Lane County Circuit Court
161109273; A151856

328 P3d 799

Tanya M. Sanerib argued the cause for appellants. With her on the opening brief were Christopher Winter and Crag Law Center, and William H. Sherlock and Hutchinson, Cox, Coons, Orr & Sherlock, P.C. With her on the reply brief were Center for Biological Diversity, and John Mellgren and Western Environmental Law Center.

Denise Fjordbeck, Senior Assistant Attorney General, argued the cause for respondents. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, Stephanie L. Striffler, Senior Assistant Attorney General, and Inge D. Wells, Assistant Attorney General.

Elisabeth A. Holmes and Center for Food Safety filed the brief *amici curiae* for Kitty Piercy, Mayor of Eugene; Pete Sorenson, Rob Handy, Shawn Boles, Sasha Luftig, Jessica Bloomfield, Howard Bonnett, Dawn Lesley, Dave Funk, Kathi Jaworski, Sue Wolling, Artemio Paz Jr., Martin Donohoe, and Harper Keeler, Individually; Willamette Farm and Food Coalition; Northwest Center for Alternatives to Pesticides; Center for Food Safety; Eugene Local Foods; Kid Food Matters; Climate Solutions; Native American Student Union at the University of Oregon; Partners for Sustainable Schools; Sustainable Oregon Schools Initiative; Sundance Natural Foods; Falling Sky Brewery; Sequential Biofuels; Mount Pisgah Arboretum; Native American Law

Students Association-University of Oregon Chapter; and Witness.

Before Hadlock, Presiding Judge, and DeVore, Judge, and Schuman, Senior Judge.

HADLOCK, P. J.

## HADLOCK, J.

Plaintiffs are children who, through their guardians *ad litem*, sued the State of Oregon and Governor John Kitzhaber, M.D., for declaratory and equitable relief. In their amended complaint, plaintiffs seek, in addition to other relief, a declaration that defendants "have violated their duties to uphold the public trust and protect the State's atmosphere as well as the water, land, fishery, and wildlife resources from the impacts of climate change." Defendants moved to dismiss the amended complaint on the ground that the trial court lacked subject matter jurisdiction. The trial court granted that motion. On plaintiffs' appeal, we reverse and remand.

On appeal from dismissal of a Uniform Declaratory Judgments Act complaint for a purported lack of subject matter jurisdiction, our task is to determine whether the complaint states a justiciable claim for relief under that Act, that is, one that the trial court had jurisdiction to adjudicate. *See Hale v. State of Oregon*, 259 Or App 379, 383, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014) ("Courts cannot exercise jurisdiction over nonjusticiable controversies because a court cannot render advisory opinions."); *Beck v. City of Portland*, 202 Or App 360, 367-68, 122 P3d 131 (2005) ("[w]here a defendant brings a motion to dismiss a claim for declaratory relief * * * on the ground that the claim is not justiciable, the defendant is, in fact, asserting that the trial court lacks subject matter jurisdiction[.]"). In doing so, "we assume the truth of all well-pleaded facts alleged in the complaint," and review the trial court's ruling on the jurisdictional question for errors of law. *Hale*, 259 Or App at 382.

Accordingly, we begin by reviewing the allegations in plaintiffs' amended complaint. Those allegations are based on plaintiffs' conception of "the public trust doctrine," which, they assert, obligates defendants "to hold vital natural resources in trust for the benefit of their citizens." Plaintiffs allege that the public trust doctrine "stems from the common law and Constitutional and statutory provisions" and finds its origin in "the law of nature" that "these things are common to mankind—the air, running water, the sea, and the shores of the sea." They identify specific

natural resources as assets of that trust, including certain "water resources," "State owned lands," and "the air or atmosphere." Plaintiffs claim that defendants have a "fiduciary duty under the public trust doctrine * * * to protect common uses" of the resources.

Following that broad description of the public trust doctrine as they conceive it, plaintiffs allege that the state has failed to meet its fiduciary obligations to protect the natural resources that plaintiffs identify as assets of the public trust. Plaintiffs assert that increases in greenhouse gas emissions are causing climate changes with potentially "catastrophic consequences" to the state's natural resources and the health of its citizens. Nonetheless, plaintiffs contend, "[t]here is still time to curb and reduce carbon dioxide emissions to avoid irrevocable changes to the atmosphere," and they specifically allege that, "to protect Oregon's public trust assets, the best available science concludes that concentrations of atmospheric carbon dioxide cannot exceed 350 parts per million." To reduce atmospheric carbon dioxide concentrations to that level by the end of the century, plaintiffs claim, emissions "must begin to decline at a global average of at least 6 percent each year, beginning in 2013, through 2050," and should decline at five percent per year after that.

Plaintiffs acknowledge in the amended complaint that Oregon officials have taken steps meant to combat climate change, including through the 2004 establishment of the Governor's Advisory Group on Global Warming, which has developed a plan to reduce Oregon's greenhouse-gas emissions, the subsequent passage of HB 3543 (2007), which set goals for decreasing greenhouse-gas emissions and levels in Oregon through 2050, and establishment of the Oregon Climate Change Research Institute (OCCRI) in 2007. Plaintiffs allege, however, that those steps "are inadequate to meet the State's greenhouse gas reductions that will be required in order to protect Oregon's trust assets and attain carbon dioxide concentrations of 350 ppm" and that Oregon already is failing to meet its goals.

Plaintiffs' amended complaint includes a single claim for relief, in which plaintiffs reiterate their allegation that defendants have a fiduciary obligation "to hold vital

natural resources in trust for the benefit of their citizens," including the atmosphere. Plaintiffs contend that defendants' alleged "failure to regulate and reduce carbon dioxide emissions" and their alleged "failure to preserve and protect carbon sinks such as forests, soils and agricultural land" amount to a breach of that fiduciary duty. Plaintiffs request the following relief:

"[1.]    A declaration that the atmosphere is a trust resource, and that the State of Oregon, as a trustee, has a fiduciary obligation to protect the atmosphere as a commonly shared public trust resource from the impacts of climate change for Plaintiffs and for present and future generations of Oregonians.

"[2.]    A declaration that water resources, navigable waters, submerged and submersible lands, islands, shorelands, coastal areas, wildlife, and fish are trust resources, and that the State of Oregon, as a trustee, has a fiduciary obligation to protect these assets as commonly shared public trust resources from the impacts of climate change for Plaintiffs and for present and future generations of Oregonians.

"[3.]    A declaration that Defendants have failed to uphold their fiduciary obligations to protect these trust assets for the benefits of Plaintiffs as well as current and future generations of Oregonians by failing adequately to regulate and reduce carbon dioxide emissions in the State of Oregon.

"[4.]    An order requiring Defendants to prepare, or cause to be prepared, a full and accurate accounting of Oregon's current carbon dioxide emissions and to do so annually thereafter.

"[5.]    An order requiring Defendants to develop and implement a carbon reduction plan that will protect trust assets by abiding by the best available science.

"[6.]    A declaration that the best available science requires carbon dioxide emissions to peak in 2012 and to be reduced by a least six per cent each year until at least 2050."

Defendants did not file an answer to the amended complaint. Instead, they moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the trial

court lacked authority to grant the declaratory and injunctive relief that plaintiffs sought. In doing so, defendants emphasized that their dismissal motion was *not* directed to the merits of plaintiffs' allegations regarding the scope of the public trust doctrine or defendants' obligations under it:

> "[B]y agreement between counsel, this [motion and] memorandum does not address the existence of the public trust, the question of whether the state has met its duties under any such trust, or whether plaintiffs have effectively stated a claim that requires the [court] to decide those issues at all."

(Footnote omitted.) Thus, defendants did *not* argue that plaintiffs were not entitled to the declarations they sought because those requested declarations misstated the law.[1] Rather, defendants argued solely that the trial court should dismiss plaintiffs' claim for lack of subject matter jurisdiction.

Broadly speaking, defendants' dismissal motion had two components, the first generally directed at the three requests for declarations regarding the public trust doctrine (numbered 1 through 3 in the list quoted above) and the obligations that plaintiffs assert it creates, and the second generally directed at the three requests for injunctive relief (numbered 4 through 6).[2] With respect to the requests for declarations, defendants argued that the claim was not cognizable under the Uniform Declaratory Judgments Act because it impermissibly asked the trial court "to create * * * legal obligations in the first instance" rather than asking

---

[1] In all events, as we discuss at more length below, a dispositive motion directed at the merits of plaintiffs' claim for declaratory relief ordinarily would result in the trial court issuing one or more declarations that state the pertinent law correctly, not in dismissal of the complaint. *See Beldt v. Leise*, 185 Or App 572, 576, 60 P3d 1119 (2003) ("If there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights, even if that declaration is directly contrary to what it believes its rights to be.").

[2] We view the sixth request as one for injunctive relief, even though it is worded in terms of seeking a declaration, because it does not request a declaration regarding *legal relations* between the parties, as the Uniform Declaratory Judgments Act contemplates, but seeks a declaration as to what the "best available science" says about reducing carbon dioxide emissions. Any dispute about the "best available science" is tightly linked to the request for injunctive relief that immediately precedes it, that is, plaintiffs' request for an "order requiring Defendants to develop and implement a carbon reduction plan that will protect trust assets by abiding by the best available science." Accordingly, we view it as a component of that requested injunctive relief.

the court "to determine rights and legal relations under existing laws." According to defendants, plaintiffs were essentially asking the court "to conjure up an atmospheric trust obligation wholly of its own design" by "engag[ing] in a free-ranging exploration of what the law may be, and then impos[ing] its newly-found laws upon the other branches of government." Defendants argued to the trial court that the Uniform Declaratory Judgments Act "does not grant [the court] such powers."

With respect to the requests for orders requiring defendants to take specific steps to combat climate change, defendants argued that the trial court lacked jurisdiction because "the relief that plaintiffs request would cause the court to run afoul of the separation of powers principle." In that regard, defendants argued that, if the court granted plaintiffs' requested injunctive relief, it would unduly burden the other branches of government by "compelling [those branches] to address the impacts of climate change in one way, and one way only—namely, by reducing carbon dioxide emissions in a specified amount over an established timeframe." For similar reasons, defendants argued, granting plaintiffs' requested relief would impermissibly "cause the court to perform the 'functions' of the other branches, especially those of the legislature." Third, and relatedly, defendants asserted that the court lacks jurisdiction to award the requested declaratory or equitable relief under "the political question doctrine."[3]

In response to defendants' motion, plaintiffs argued that defendants had inappropriately focused on a small portion of the requested relief, *i.e.*, plaintiffs' request for an order requiring defendants to take specified steps to reduce greenhouse-gas emissions. Plaintiffs emphasized their request for declarations "regarding the governor's authority to protect public trust assets" and argued that it was within the trial court's power to declare what resources the public trust doctrine protects. That kind of declaration, plaintiffs argued, "falls squarely within the judiciary's role to declare the law."

---

[3] Defendants also argued to the trial court that they were protected against plaintiffs' claim by principles of sovereign immunity. Defendants do not pursue that argument on appeal, and we do not address it further.

The trial court agreed with each of defendants' arguments. The court initially focused on the fact that plaintiffs had not alleged that defendants had violated a specific constitutional or statutory provision but had alleged only that a broader-based public trust doctrine imposed obligations on defendants to protect certain natural resources:

> "Plaintiffs ask the Court to create and impose an affirmative duty on Defendants. Then, Plaintiffs argue that the Court should find that Defendants failed to meet this obligation. Plaintiffs argue that they are not asking the Court to *create* a new duty but merely to recognize a duty well supported by 'state sovereignty, the common law of Oregon, as well as in its statutes and the state Constitution.' However, the many statutes, cases, and constitutional provisions Plaintiffs cite to do not support their argument. \* \* \* Thus, the Court concludes that Plaintiffs' requested relief asks this Court to extend the law by creating a new duty rather than interpret a pre-existing law. Therefore, the Court concludes that the relief Plaintiffs seek exceeds the Court's authority under Oregon's Declaratory Judgment Act."

(Citations omitted; emphasis in original.) The court also ruled that it could not grant plaintiffs' requested relief without violating separation-of-powers principles because the injunctive relief that plaintiffs sought—orders regarding specific carbon-dioxide reduction measures—asked the court both to "effectively 'strike down'" existing legislation, displacing already established legislative goals and to engage in lawmaking functions that are constitutionally reserved to the legislature. Finally, the court concluded that plaintiffs essentially were asking the court to decide "political questions, which necessarily are decided by the political branches of government, not the judiciary." For all of those reasons, the trial court concluded that it lacked jurisdiction to award declaratory or injunctive relief against defendants, and it granted defendants' motion to dismiss.

On appeal, plaintiffs assert that they are entitled to, at least, declarations that (1) defendants "have an obligation to protect Oregon's water supply and other public trust resources from substantial impairment due to greenhouse gas emissions" and (2) "that the atmosphere is a trust resource." Plaintiffs contend that the trial court has

statutory authority to declare the law in those respects and that doing so would not violate separation-of-powers or political-question principles because declarations in their favor would require defendants, not the court, "to identify and implement measures to reduce greenhouse gas emissions." Thus, even if their requests for injunctive relief requiring defendants to take specific steps to combat climate change "were over-stepping," plaintiffs contend, the trial court should have ruled in defendants' favor only with respect to those requests, instead of dismissing the entire case. Plaintiffs also argue that even their requests for specific injunctive relief could be granted without violating separation-of-powers or political-question principles.

In response, defendants largely reiterate the arguments they presented to the trial court, except that they no longer argue that plaintiffs' requests for declaratory relief are not cognizable under the Uniform Declaratory Judgments Act. Defendants assert that this court need not resolve that question "because regardless whether plaintiffs' claim falls within the scope of the [Act], defendants' justiciability arguments are dispositive." Defendants' argument on appeal has two parts. First, they contend that plaintiffs' request for "a bare declaration that a public trust exists in the atmosphere" is not justiciable because no "meaningful and practical relief *** could spring from such a declaration." Second, focusing on plaintiffs' requests for orders requiring defendants to take specific steps to combat climate change, defendants argue that the court could not grant such relief without violating separation-of-powers and political-question principles.

We reject defendants' suggestion that we need not decide whether plaintiffs' claims are cognizable under the Uniform Declaratory Judgments Act. In our view, this case turns entirely on a proper understanding of the scope of judicial authority under that Act, and we begin our analysis there.

The Uniform Declaratory Judgments Act starts by broadly describing the judicial power to declare the law:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal

relations, whether or not further relief is or could be claimed. No action or proceedings shall be open to objection on the ground that a declaratory judgment is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a judgment."

ORS 28.010.

The next provision in the Act refers to declarations of rights under certain laws and writings:

"Any person * * * whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such * * * constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

ORS 28.020. Other provisions are even more specific, being directed to contracts, ORS 28.030, and matters related to trusts and estates, ORS 28.040.

But the Act states explicitly that the "enumeration in ORS 28.010 to 28.040"—that is, the identification of particular circumstances in which courts may issue declaratory judgments—"does not limit or restrict the exercise of the general powers conferred in ORS 28.010, in any proceedings where declaratory relief is sought, in which a judgment will terminate the controversy or remove an uncertainty." ORS 28.050. In other words, a court has broad authority "to declare rights, status, and other legal relations" between parties whether those claimed "legal relations" are based on a written provision found in a constitution or statute or, instead, derive from some other source of law.

That is what plaintiffs asked the trial court to do in this case. Again, plaintiffs focus their appeal on the following declarations they requested about the scope of the public trust doctrine and defendants' obligations under it:

"A declaration that the atmosphere is a trust resource, and that the State of Oregon, as a trustee, has a fiduciary obligation to protect the atmosphere as a commonly shared public trust resource from the impacts of climate change

for Plaintiffs and for present and future generations of Oregonians.

"A declaration that water resources, navigable waters, submerged and submersible lands, islands, shorelands, coastal areas, wildlife, and fish are trust resources, and that the State of Oregon, as a trustee, has a fiduciary obligation to protect these assets as commonly shared public trust resources from the impacts of climate change for Plaintiffs and for present and future generations of Oregonians."

Those are requests for a declaration of the "rights, status, and other legal relations" between the parties, which—assuming the action is otherwise justiciable (and more on that later)—is all that is necessary to give a court authority under the Uniform Declaratory Judgments Act to issue an appropriate declaration.

In ruling otherwise, the trial court focused on the fact that plaintiffs had not alleged that defendants had violated "a specific constitutional provision or statute." To the extent that the court believed that a request for a declaration must be based on those kinds of *written* sources of law, as opposed to other doctrines, it misunderstood the scope of its statutory authority. Under ORS 28.010 and ORS 28.050, a court has power to declare the rights, status, and other legal relations between the parties to a declaratory judgment action no matter what source of law gives rise to those rights and obligations. Indeed, the Supreme Court has rejected the argument that the Uniform Declaratory Judgments Act "confine[s] the courts to the interpretation and construction of written instruments and laws." *In re Estate of Ida Dahl*, 196 Or 249, 253, 248 P2d 700 (1952).[4] To the contrary, ORS 28.050 "completely devastate[s]" that position, *id.*, which the court has explained is contrary to the Act's declared purpose: "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." ORS 28.120.

---

[4] When the Supreme Court issued the opinion in *In re Estate of Ida Dahl*, the Uniform Declaratory Judgments Act was codified at §§ 6-601 to 6-616 of the Oregon Compiled Laws Annotated (1940). The quoted provisions of the Act have not changed materially since then.

The trial court's ruling also could be read as a rejection of plaintiffs' theory that a public trust doctrine exists and imposes affirmative obligations on defendants to protect the state's natural resources from adverse effects of climate change. The court's assertion that plaintiffs were asking the court "to extend the law by creating a new duty rather than interpret a pre-existing law" suggests as much. But to the extent that the court ruled that no source of law imposes the duties on defendants that plaintiffs describe, that was a ruling on the *merits* of plaintiffs' theory—a ruling that went beyond what defendants claimed to request in their dismissal motion, which they insisted was *not* directed at the substance of plaintiffs' claims. Not only would such a ruling be at odds with the parties' agreement not to litigate the merits at this early stage in the case, it also would not form a basis for dismissal of the complaint. Instead, the proper disposition—after the parties have addressed the substance of plaintiffs' requests for declaratory relief—would be the issuance of declarations stating what the law *is*, whether or not it is as plaintiffs contend. *See Beldt*, 185 Or App at 576 ("If there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights, even if that declaration is directly contrary to what it believes its rights to be.").

In short, the trial court erred when it ruled that plaintiffs' first two requests for declaratory relief were not cognizable under the Uniform Declaratory Judgments Act. As noted, defendants no longer defend that aspect of the trial court's ruling. Instead, they argue only that plaintiffs' "bare" requests for declaratory relief are nonjusticiable because the issuance of those declarations *itself* "would have no practical effect on plaintiffs' rights" (because the declarations would not explicitly require defendants to do anything) and the court could not order further injunctive relief without violating the separation-of-powers and political-question doctrines.[5] We disagree with defendants' fundamental premise, *viz.*, that plaintiffs' request for bare declarations, absent injunctive relief, does not create a justiciable controversy.

[5] Defendants also contend that plaintiffs did not preserve their request for "bare" declarations independent of the requested injunctive relief. *See* ORAP 5.45(4)(a) (setting out principle that questions must generally have been preserved—*i.e.*, raised in the trial court—before being considered on appeal). We reject that argument without discussion.

Defendants' argument is grounded in the constitutional requirement that courts decide only those disputes that are "justiciable," *i.e.*, those that are based on present facts, *TVKO v. Howland*, 335 Or 527, 534, 73 P3d 905 (2003), and that involve "an actual and substantial controversy between parties having adverse legal interests." *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982). As we recently have observed, the Uniform Declaratory Judgments Act has "an uneasy relationship with the constitutional concept of justiciability." *Hale*, 259 Or App at 383.

> "The statutes announce that their purpose 'is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and [they are] to be liberally construed and administered.' ORS 28.120. * * * The statutory authority to issue declaratory judgments, however, is constrained by constitutional justiciability requirements. The Supreme Court has held that the [Act] does not give courts authority to issue declaratory rulings 'in a vacuum; they must resolve an actual or justiciable controversy.' Courts cannot exercise jurisdiction over nonjusticiable controversies because a court cannot render advisory opinions. Thus, if a claim for a declaratory judgment does not involve a justiciable controversy, a court does not have jurisdiction to consider it."

*Id.* (citations and footnote omitted).

In reconciling the tension between the Uniform Declaratory Judgments Act and constitutional justiciability requirements, this court has identified "two irreducible requirements for justiciability: The dispute must involve present facts, and it must be a dispute in which a prevailing plaintiff can receive meaningful relief from a losing defendant." *Id* at 384. Here, defendants do not dispute that plaintiffs' requests for declaratory relief are based on present facts. Rather, they contend only that the declarations that plaintiffs seek do not amount to the sort of "meaningful relief" that makes a claim justiciable.

Defendants' argument cannot withstand the Supreme Court's holding in *Pendleton School Dist. v. State of Oregon*, 345 Or 596, 200 P3d 133 (2009) (*Pendleton School Dist. I*). That case involved the state's obligations under Article VIII,

section 8, of the Oregon Constitution, which provides, in part:

"(1) The Legislative Assembly shall appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law, and publish a report that either demonstrates the appropriation is sufficient, or identifies the reasons for the insufficiency, its extent, and its impact on the ability of the state's system of public education to meet those goals."

The plaintiff school districts sought a declaration that Article VIII, section 8, "requires that the legislature fund the Oregon public school system at a level sufficient to meet certain quality educational goals established by law and a mandatory injunction directing the legislature to appropriate the necessary funds." *Pendleton School Dist. I*, 345 Or at 599. That is, like the plaintiffs in this case, the *Pendleton School Dist. I* plaintiffs sought both a declaration about the state's legal obligations and injunctive relief requiring the state to take specific action to meet those alleged obligations.

The Supreme Court agreed that Article VIII, section 8, "directs the legislature to fund public primary and secondary education at certain levels." *Pendleton School Dist. v. State of Oregon*, 347 Or 28, 32, 217 P3d 175, *adh'd to as modified on recons*, 347 Or 344 (2009) (*Pendleton School Dist. II*) (discussing earlier holding in course of deciding attorney-fee petition). Based on the latter half of that constitutional provision, however, the court held that the plaintiffs were not entitled to the *injunctive* relief they requested, *i.e.*, an order directing the state to appropriate additional funds for education. It explained: "The reporting provision of Article VIII, section 8 contemplates the possibility that the legislature will not fund the public school system at the legislatively specified level in a particular biennium and provides that, in that instance, the legislature will report its failure to the public." *Pendleton School Dist. I*, 345 Or at 611. Accordingly, the court concluded, the plaintiffs were not entitled to an injunction requiring the state to take action that the constitutional provision did not itself require. For the same reason, the plaintiffs were not entitled to a declaration that the constitution required the state to *actually* provide a specific level of funding. *Id.*

However—and most pertinent to our analysis in this case—the Supreme Court held that the *Pendleton School Dist. I* plaintiffs *were* entitled to a different declaration: "that the legislature failed to fully fund the public school system, if that is the case." *Id.* at 610. The plaintiffs could be entitled to that declaratory relief, if the legislature had failed to meet its funding obligation, the court explained, because that relief "would be consistent with the first provision of Article VIII, section 8, which requires the legislature itself to admit any underfunding." *Id.* Because the state in fact admitted that it had not funded schools at the constitutionally required levels, the plaintiffs were entitled to a declaration "that the legislature failed to act in accordance with the constitutional mandate." *Id.*

Thus, the *Pendleton School Dist. I* court held that the plaintiffs were entitled to a declaratory judgment that encompassed a declaration of what the state's legal obligation was ("to fully fund the public school system") and that it had failed to do so. And the plaintiffs were entitled to that declaration despite the fact that they were *not* entitled to any related injunctive relief against the state. The court explained that the request established a justiciable controversy under the Uniform Declaratory Judgments Act, notwithstanding the state's contention that no "binding decree" would issue, *id.* at 605, because the resulting declaration would establish what constitutional obligation the legislature might have to adequately fund education:

> "The issue whether Article VIII, section 8, imposes a duty on the legislature to fund the public school system at a specified level every biennium presents a set of present facts regarding the interpretation of a constitutional provision; it is not simply an abstract inquiry about a possible future event."

*Id.* at 606.

That aspect of the *Pendleton School Dist. I* holding is consistent with a principle that the Oregon courts have articulated in other cases: that courts and the public are entitled to assume that the state will act in accordance with its duties as those duties are announced by the courts. The Supreme Court discussed that principle in *Swett*

*v. Bradbury*, 335 Or 378, 389, 67 P3d 391 (2003), in which it awarded attorney fees to plaintiffs who had successfully challenged the constitutionality of a ballot measure, even though the plaintiffs had obtained only declaratory, not injunctive relief:

> "[T]his case on the merits involved a declaratory judgment proceeding and, in such proceedings, a court has the power to grant equitable remedies where appropriate. Although it is true that plaintiffs in the case on the merits confined their prayer to a request for a declaration of their rights, they could have sought an injunction as well. They did not do so because it would have been pointless. As the state itself acknowledges, *equitable relief—such as an injunction against enforcement of [the ballot measure]—was not necessary, because this court and the lower courts would assume that the responsible state officials would honor the court's declaration without the necessity of an accompanying injunction.*"

(Citations omitted; emphasis added.)

Here, too, it must be assumed that the state will act in accordance with a judicially issued declaration regarding the scope of any duties that the state may have under the public trust doctrine. Plaintiffs' requests for "bare" declarations regarding the scope of the state's present obligations, if any, under that doctrine are, therefore, justiciable. It follows that the trial court erred by not entering declarations regarding *whether*, as plaintiffs allege, under the public trust doctrine:

- "the atmosphere is a trust resource, and * * * the State of Oregon, as a trustee, has a fiduciary obligation to protect the atmosphere as a commonly shared public trust resource from the impacts of climate change for Plaintiffs and for present and future generations of Oregonians"; and

- "water resources, navigable waters, submerged and submersible lands, islands, shorelands, coastal areas, wildlife, and fish are trust resources, and * * * the State of Oregon, as a trustee, has a fiduciary obligation to protect these assets as commonly shared public trust resources from the impacts of climate change for Plaintiffs and for present and future generations of Oregonians."

        We next consider the appropriate disposition of this appeal in light of that error. In some cases in which "the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim," we have "review[ed] that determination as a matter of law and then remand[ed] for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits." *Doe v. Medford School Dist. 549C*, 232 Or App 38, 46, 221 P3d 787 (2009). For two related reasons, we decline to do so here. First, it is not entirely clear that the trial court's dismissal of the declaratory judgment action was based on its rejection of plaintiffs' arguments on the merits; as discussed above, that dismissal may have been based on a misapprehension of the scope of declaratory relief that the Uniform Declaratory Judgments Act authorizes a court to grant. Second, and more fundamentally, the parties to this case have not yet litigated the merits of plaintiffs' requests for declaratory relief. Indeed, defendants explicitly stated in association with their dismissal motion that the motion was not based on any assertions about "the existence of the public trust" or "whether the state has met its duties under any such trust." We will not address those questions without the benefit of fully developed arguments from the parties on those points.

        Finally, we also decline to address whether plaintiffs' remaining requests for declaratory and injunctive relief are nonjusticiable because a court would violate separation-of-powers or political-question principles if it granted the requests. That question cannot be answered until a court declares the scope of the public trust doctrine and defendants' obligations, if any, under it. That is, if the doctrine itself imposes specific affirmative obligations on defendants (like requiring defendants to take the particular actions that plaintiffs request), a judgment declaring that defendants have breached those obligations or ordering defendants to take the requested actions might not unduly burden the other branches of government or result in the judiciary impermissibly performing duties or making policy determinations that are reserved to those other branches. Again, it would be inappropriate for us to express a view on whether the public trust doctrine imposes such particular

obligations on defendants before the parties have litigated that question. ·

In short, plaintiffs are entitled to a judicial declaration of whether, as they allege, the atmosphere "is a trust resource" that "the State of Oregon, as a trustee, has a fiduciary obligation to protect *** from the impacts of climate change," and whether the other natural resources identified in plaintiffs' complaint also "are trust resources" that the state has a fiduciary obligation to protect. The answers to those questions necessarily will inform the court's determination whether plaintiffs are entitled to any of the other relief they request. We emphasize that we express no opinion, here, on the merits of plaintiffs' allegations. The trial court must evaluate those allegations, in the first instance, after defendants have answered or otherwise responded on the merits to plaintiffs' complaint.

Reversed and remanded.