ARMSTRONG, P. J.
*586 Plaintiffs[1] sued defendants the State of Oregon and Governor Kate Brown[2] (collectively, the state) for declaratory and equitable relief related to the state's alleged failure to take sufficient steps to protect the state's *28 public-trust resources from the effects of climate change. This case is before us for a second time. In the first appeal, we reversed the trial court's dismissal of the case on justiciability grounds and remanded for the trial court to determine whether plaintiffs were entitled to declarations that the atmosphere and other natural resources are trust resources that the state has a fiduciary obligation to protect. Chernaik v. Kitzhaber , 263 Or. App. 463, 481, 328 P.3d 799 (2014) ( Chernaik I ). On remand, the trial court denied plaintiffs' motion for partial summary judgment and granted the state's motion for summary judgment, concluding that (1) only state submerged and submersible lands are resources encompassed by the common-law public-trust doctrine and (2) the state does not have a fiduciary obligation to protect public-trust resources from the effects of climate change. Based on those conclusions, the trial court entered a judgment dismissing plaintiffs' case. Plaintiffs appeal, arguing that they are entitled to the declarations that they sought in their motion. On appeal, we conclude that the public-trust doctrine does not impose a fiduciary obligation on the state to take affirmative action to protect public-trust resources from the effects of climate change. Because that conclusion resolves the controversy between the parties, we do not address the other declarations sought by plaintiffs. Accordingly, the trial court did not err in its rulings on the parties' summary judgment motions. However, because the trial court dismissed the case rather than entering a judgment declaring the parties' rights, we vacate and remand for the trial court to enter the requisite declaratory judgment. *587 We begin by discussing plaintiffs' amended complaint and our opinion in Chernaik I because the remand order in that case set up the parties' motions for summary judgment that are now on review. Plaintiffs sued the state in 2011 for declaratory and injunctive relief based on plaintiffs' conception of "the public-trust doctrine." In their amended complaint, plaintiffs assert that the state holds "vital natural resources" of the state in trust for the benefit of its citizens, including the waters of the state, submerged and submersible lands, islands, shorelands, coastal areas, wildlife, fish, and the atmosphere. Plaintiffs further allege that the state has a fiduciary obligation to protect and preserve those resources for purposes of "conservation, pollution abatement, maintenance and enhancement of aquatic and fish life, habitat for fish and wildlife, ecological values, in-stream flows, commerce, navigation, fishing, recreation, energy production, and the transport of natural resources."
Plaintiffs also set forth allegations related to the effects from climate change worldwide and, more specifically, effects from climate change on Oregon's natural resources, citizens, and economy, and allege that "[a] failure to take appropriate action will result in the severe alteration and potentially the collapse of the earth's natural systems leaving a planet that is largely unfit for human life." Plaintiffs further allege that "Oregon has the ability to curtail greenhouse gas emissions, increase carbon sequestration, and take the steps necessary to protect the public trust assets of the State from the adverse [effects] of climate change." Plaintiffs recognize that the state has taken some steps meant to combat the effects of climate change; however, plaintiffs allege that the goals that the state has set are inadequate and, "[d]espite having a concrete greenhouse gas reduction and mitigation plan in place, Oregon is falling significantly behind the targets set by that plan."
Plaintiffs allege a single claim for declaratory relief based on the public-trust doctrine. For that claim, plaintiffs assert that the state has failed "to uphold [its] public trust obligations" with respect to the resources that plaintiffs allege are part of the public trust, and that failure "threatens the health, safety, and welfare of Plaintiffs, as well as *588 present and future generations of Oregon citizens." In their prayer for relief, plaintiffs request both declaratory and injunctive relief:
"[1.] A declaration that the atmosphere is a trust resource, and that the State of Oregon, as a trustee, has a fiduciary obligation to protect the atmosphere as a commonly shared public trust resource from the [effects] of climate change for Plaintiffs and for present and future generations of Oregonians.
*29 "[2.] A declaration that water resources, navigable waters, submerged and submersible lands, islands, shorelands, coastal areas, wildlife, and fish are trust resources, and that the State of Oregon, as a trustee, has a fiduciary obligation to protect these assets as commonly shared public trust resources from the [effects] of climate change for Plaintiffs and for present and future generations of Oregonians.
"[3.] A declaration that Defendants have failed to uphold their fiduciary obligations to protect these trust assets for the benefits of Plaintiffs as well as current and future generations of Oregonians by failing adequately to regulate and reduce carbon dioxide emissions in the State of Oregon.
"[4.] An order requiring Defendants to prepare, or cause to be prepared, a full and accurate accounting of Oregon's current carbon dioxide emissions and to do so annually thereafter.
"[5.] An order requiring Defendants to develop and implement a carbon reduction plan that will protect trust assets by abiding by the best available science.
"[6.] A declaration that the best available science requires carbon dioxide emissions to peak in 2012 and to be reduced by at least six per cent each year until at least 2050."
In response to plaintiffs' amended complaint, the state filed a motion to dismiss based on a lack of subject matter jurisdiction, arguing that the trial court lacked the authority to grant the relief that plaintiffs sought. The trial court granted that motion, and plaintiffs appealed.
*589 On appeal, we reversed the trial court's dismissal of plaintiffs' amended complaint. Chernaik I , 263 Or. App. at 481, 328 P.3d 799. We concluded that plaintiffs' first two requests for declaratory relief, on which plaintiffs focused in that appeal, were cognizable under the Uniform Declaratory Judgments Act, and that those requests presented a justiciable controversy under the act. Id. at 475, 479, 328 P.3d 799. Thus, we concluded that
"the trial court erred by not entering declarations regarding whether , as plaintiffs allege, under the public trust doctrine:
"• 'the atmosphere is a trust resource, and * * * the State of Oregon, as a trustee, has a fiduciary obligation to protect the atmosphere as a commonly shared public trust resource from the impacts of climate change for Plaintiffs and for present and future generations of Oregonians'; and
"• 'water resources, navigable waters, submerged and submersible lands, islands, shorelands, coastal areas, wildlife, and fish are trust resources, and * * * the State of Oregon, as a trustee, has a fiduciary obligation to protect these assets as commonly shared public trust resources from the impacts of climate change for Plaintiffs and for present and future generations of Oregonians.' "
Id. at 479, 328 P.3d 799 (emphasis and ellipses in original). We then declined "to address whether plaintiffs' remaining requests for declaratory and injunctive relief are nonjusticiable because a court would violate separation-of-powers or political-question principles if it granted the requests" because "[t]hat question cannot be answered until a court declares the scope of the public trust doctrine and defendants' obligations, if any, under it." Id. at 480, 328 P.3d 799.
On remand, the state answered plaintiffs' amended complaint. The trial court then entered a scheduling order for the parties to file simultaneous motions for summary judgment or partial summary judgment that addressed the merits of plaintiffs' requested relief.
Plaintiffs moved for partial summary judgment, requesting that the trial court issue the following declarations:
*590 "1. A declaration of law that the State of Oregon, as a trustee and sovereign entity, has a fiduciary obligation to manage the atmosphere, water resources, navigable waters, submerged and submersible lands, shorelands and coastal areas, wildlife and fish as public trust assets, and to protect them from substantial impairment caused by the emissions of greenhouse gases in, or within the control of, the State of Oregon and the resulting adverse effects of climate change and ocean acidification;
*30 "2. A declaration that atmospheric concentrations of carbon dioxide (CO2) exceeding 350 parts per million (ppm) constitutes substantial impairment to the atmosphere and thereby the other public trust assets;
"3. A declaration that to protect these public trust assets from substantial impairment, Oregon must contribute to global reduction in emissions of CO2 necessary to return atmospheric concentrations of carbon dioxide to 350 ppm by the year 2100; and
"4. A declaration that Defendants have failed, and are failing, to uphold their fiduciary obligations to protect these trust assets from substantial impairment by not adequately reducing and limiting emissions of carbon dioxide and other greenhouse gases in, or within the control of, the State of Oregon."[3]
Plaintiffs specifically did not seek a ruling on summary judgment with respect to their requests for injunctive relief set out in the amended complaint.
The state moved for summary judgment on all of plaintiffs' requests for relief in the amended complaint. The state specifically requested that the trial court make the following rulings, and dismiss plaintiffs' amended complaint:
"1) The common law public trust doctrine does not extend to the atmosphere.
"2) The common law public trust doctrine does not impose the particular affirmative actions associated with traditional legal trusts (i.e ., fiduciary obligations or duties).
*591 Instead, Oregon courts have applied it only as a restraint on alienation.
"3) Because there are no fiduciary duties associated with the common law public trust doctrine, any declaratory or injunctive relief based on an alleged violation of such duties must be denied.
"4) Even if this Court recognizes new fiduciary duties under the public trust doctrine, injunctive relief is not warranted, because the Court must presume that the State will comply with the new law as announced, and therefore, that no future violation of law is likely.
"5) This Court is without authority to grant injunctive or further relief, because doing so would violate the principle of separation of powers.
"6) Finally, this Court lacks authority to grant injunctive relief, because such relief would cause the Court to decide a political question that our constitutional system entrusts to the other branches of government."
The trial court granted the state's motion for summary judgment, denied plaintiffs' motion for partial summary judgment, and entered a general judgment dismissing the action. In a letter opinion, the trial court set out its reasoning. The court first concluded that only submerged and submersible lands are resources that are encompassed by the public-trust doctrine.[4] In doing so, the court determined that the following resources are not public-trust resources: navigable waters of the state, beaches, shorelands, islands, fish and wildlife, and the atmosphere.
The court then turned to the duties that the state has under the public-trust doctrine. The court reviewed relevant case law and concluded that, historically, "courts applying the public trust doctrine have merely prevented the State from entirely alienating submerged and submersible lands under navigable waters," and noted that no such alienation is at issue in this case. Based on that history, the *592 court concluded that "the State does not have a fiduciary obligation to protect submerged and submersible lands *31 from the [effects] of climate change."[5]
On appeal from that judgment, plaintiffs assign error to the trial court's denial of their motion for partial summary judgment and its grant of the state's motion for summary judgment. Both rulings are reviewable on appeal "to determine whether either party is entitled to judgment as a matter of law." Busch v. Farmington Centers Beaverton , 203 Or. App. 349, 352, 124 P.3d 1282 (2005), rev. den. , 341 Or. 216, 140 P.3d 1133 (2006). Here, the issues presented on appeal reduce to purely legal questions.
Plaintiffs argue that the trial court erred (1) in concluding that the public-trust doctrine applied only to submerged and submersible lands, (2) in concluding that the public-trust doctrine does not impose affirmative obligations on the state to protect trust resources from the effects of climate change, and (3) in not reaching the question of whether the state has upheld its public-trust duty to protect public-trust resources from substantial impairment resulting from climate change.[6] Because our conclusion on the issue is dispositive, we address only whether the state has fiduciary obligations under the public-trust doctrine to affirmatively protect public-trust resources from the effects of climate change. We conclude that it does not.
We start with a brief discussion of the historical underpinnings of Oregon's public-trust doctrine. Under the "equal-footing doctrine," upon admission to the union, Oregon obtained title to the submerged and submersible land underlying "title-navigable" water by virtue of the state's sovereignty.[7]
*593 Kramer v. City of Lake Oswego , 285 Or. App. 181, 201, 395 P.3d 592, rev. allowed , 362 Or. 38, 403 P.3d 776 (2017). The state's ownership of those lands "is comprised of an interrelationship of two distinct aspects, each possessing its own characteristics." Brusco Towboat v. State Land Bd. , 30 Or. App. 509, 516, 567 P.2d 1037 (1977), rev'd in part on other grounds , 284 Or. 627, 589 P.2d 712 (1978). First, the state holds full fee title in the property, called the jus privatum , which includes the power of alienation, viz ., the power to convey private interests in and use of that property for any purpose. Id. at 516-17, 567 P.2d 1037 ; see also Corvallis & Eastern R. Co. v. Benson , 61 Or. 359, 370, 121 P. 418 (1912) ("This private property in tidelands, the State by its legislative assembly, may grant to any one in any manner, or for any purpose, not forbidden by the constitution[.]").
"Th[e] second aspect of the state's ownership is called the jus publicum ," Brusco Towboat , 30 Or. App. at 516, 567 P.2d 1037, and is rooted in the principle that "[n]avigable waterways are a valuable and essential resource and as such all people have an interest in maintaining them for commerce, fishing, and recreation," id. at 517, 567 P.2d 1037. That aspect of the state's ownership is the common-law public-trust doctrine per se -viz. , the state "takes title to the submerged and submersible lands underlying navigable waters in trust for the public for purposes of navigation, fishing, and recreation." Kramer , 285 Or. App. at 201, 395 P.3d 592 (emphasis in original); see also Illinois Cent. R. Co. v. State of Illinois , 146 U.S. 387, 436, 13 S.Ct. 110, 36 L.Ed. 1018 (1892) ("The doctrine is founded upon the necessity of preserving to the public the use of navigable waters from private interruption and encroachment[.]").
Unlike the jus privatum , the jus publicum cannot be alienated by the state.
*32 Brusco Towboat , 30 Or. App. at 517, 567 P.2d 1037. Thus, "[r]egardless of how the state may choose to convey its private title to submerged and submersible lands, such title, even in the hands of a private party, remains subject to the paramount power of the state to intervene on behalf of the public interest." Id. at 518, 567 P.2d 1037 ; see also Illinois Cent. R. Co. , 146 U.S. at 435, 13 S.Ct. 110 (The states own the land underlying navigable waters "with the consequent right to use or dispose of any *594 portion thereof, when that can be done without substantial impairment of the interest of the public."); Corvallis Sand & Gravel v. Land Board , 250 Or. 319, 334, 439 P.2d 575 (1968) ("These 'public rights' are the rights of navigation and fishery and the state has no authority to dispose of the submerged lands in such a manner as to interfere with these rights."). The public-trust doctrine is a common-law doctrine that is a matter of state law. See, e.g. , PPL Montana, LLC v. Montana , 565 U.S. 576, 603, 132 S.Ct. 1215, 182 L.Ed.2d 77 (2012) (affirming that the doctrine is a matter of state law); Shively v. Bowlby , 152 U.S. 1, 57-58, 14 S.Ct. 548, 38 L.Ed. 331 (1894) (describing the nature and origin of the public-trust doctrine).
In deciding cases based on the public-trust doctrine, Oregon courts have "focused on the extent to which the state can alienate the lands held in trust, or on the power of the state to regulate activity with respect to title-navigable waterways." Kramer , 285 Or. App. at 203, 203-04, 395 P.3d 592 (discussing cases).[8] Thus, historically, the public-trust doctrine has served to place restraints on state action with respect to the lands it holds underlying navigable waterways to protect the recognized public uses in those waterways. That is, the state may not convey interests in those lands or allow uses of those lands or the waters over them in a manner that causes a substantial impairment to the public's right to navigation, commerce, fishing, or recreation in those waters.
With that background in place, we turn to the arguments presented in this appeal. Plaintiffs' first argument, which we ultimately do not reach, is that the public-trust doctrine applies to more than just the submerged and *595 submersible lands to which Oregon obtained title upon statehood by virtue of its sovereignty. Plaintiffs assert that the doctrine also encompasses all "essential natural resources," including, among other things, the waters of the state, fish and wildlife, and the atmosphere. Because we do not reach the merits of that argument as unnecessary to our disposition, we proceed in this opinion to refer to "public-trust resources" in the abstract, without identifying the resources that the term necessarily encompasses.
Plaintiffs' second argument, which we do address, asserts that the public-trust doctrine does more than restrain state action. Plaintiffs argue that the doctrine imposes fiduciary obligations on the state to take affirmative action to prevent substantial impairment to public-trust resources and, in particular, substantial impairment from the effects of climate change. Essentially, plaintiffs argue that inherent in the public-trust doctrine is a state obligation to protect public-trust resources from substantial impairment-whatever the source of that impairment-and that we should not be constrained from applying the public-trust doctrine in a manner that upholds that principle simply because our prior case law was based on fact patterns that are not readily translatable to the issue now before the court. Plaintiffs assert that adhering to the trial court's narrow view of the public-trust doctrine renders it meaningless in the face of the existential *33 threats to our state's resources from climate change.
Many law professors also have appeared in support of plaintiffs as amici curiae (amici law professors).[9] On this issue they argue that "[t]he sovereign fiduciary duty to protect the public's crucial assets from irrevocable damage remains the sine qua non of the public trust." They assert that we should apply the trust-law concept that requires that a trustee not sit idle and allow damage to trust property to *596 occur. They argue that, by not taking proper action in the face of climate change, the state is "abdicat[ing] [its] sovereign public trust responsibility to protect the climate system for today's citizens and for future generations."
The state responds that the public-trust doctrine does not impose affirmative, fiduciary-like trust duties upon the state. Rather, the state asserts, the public-trust doctrine is a means by which to guide state action-viz. , it imposes a restraint on state action so that its actions do not substantially impair the public's interest in the title-navigable waters of the state-but the doctrine does not compel any particular state action in the first instance. The state points out that the "trust" in the public-trust doctrine is not the same as a "trust" over property or money covered by a trust instrument, and, thus, ordinary trust law with its attendant fiduciary duties that are imposed on trustees does not apply.[10]
Before we address the parties' arguments, we first return to what plaintiffs are asking for in this case. As set out above, plaintiffs bring a single claim for relief under the common-law public-trust doctrine. In connection with that claim, plaintiffs seek declarations that the state has a "fiduciary obligation" to protect public-trust resources "from the [effects] of climate change for Plaintiffs and for present and future generations of Oregonians." Thus, we must answer whether, under the common-law public-trust doctrine, the state has a fiduciary obligation to affirmatively protect public-trust resources from the effects of climate change.
As a starting point, we reject plaintiffs' and amici law professors' reliance on other state's case law and on other sources of Oregon law, such as the Oregon Constitution, statutes, and regulations, to support their understanding of Oregon's common-law public-trust doctrine. As discussed *597 above, the public-trust doctrine is a matter of state common law. As such, it is the common law of this state that deter-mines the contours of that doctrine. That the state may have other obligations under the Oregon Constitution, statutes, or regulations does not inform what obligations the public-trust doctrine itself requires of the state, which is the question that plaintiffs have put at issue. Plaintiffs chose to sue the state based solely on the common-law public-trust doctrine; as such, we must base our analysis on that doctrine. In rejecting reliance on other sources of Oregon law, we note that plaintiffs do not provide any supporting argument that those sources represent a legislative intention to codify, expand, or modify the common-law public-trust doctrine.
We thus turn to the main argument raised by plaintiff-that the public-trust doctrine imposes an inherent fiduciary obligation on the state to take affirmative action to prevent substantial impairment to public-trust resources from the effects of climate change. To support that argument, plaintiffs *34 primarily rely on statements made in Geer v. Connecticut , 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896), overruled by Hughes v. Oklahoma , 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979), and State v. Dickerson , 356 Or. 822, 345 P.3d 447 (2015). We consider those cases in turn.[11]
In Geer , Connecticut had convicted the defendant of a violation of the state's game law that prohibited the possession of certain game for the purpose of transporting it outside of the state. The defendant argued that the law under which he was convicted violated the Commerce Clause of the United States Constitution. Geer , 161 U.S. at 522, 16 S.Ct. 600. In addressing that question, the United States Supreme Court examined "the nature of the property in game and the authority which the state had a right lawfully to exercise in relation thereto." Id . The Court explained that property in game is based on the principle of common ownership, which the state *598 has a right to control and regulate. Id. at 528, 16 S.Ct. 600. That power to control, however, "is to be exercised, like all other powers of government, as a trust for the benefit of the people, and not as a prerogative for the advantage of the government as distinct from the people, or for the benefit of private individuals as distinguished from the public good." Id. at 529, 16 S.Ct. 600. With regard to the statute at issue, the Court determined that it was a lawful exercise of that authority because it "confine[d] the use of such game to those who own it-the people of that state"-an exercise over internal commerce and not interstate commerce. Id. at 529, 532, 16 S.Ct. 600.
Plaintiffs rely on Geer for one statement in it. In the course of describing the state's ownership of game, the Court quoted from an Illinois Supreme Court case that stated:
" 'It is, perhaps, accurate to say that the ownership of the sovereign authority is in trust for all the people of the state; and hence, by implication, it is the duty of the legislature to enact such laws as will best preserve the subject of the trust, and secure its beneficial use in the future to the people of the state . But, in any view, the question of individual enjoyment is one of public policy, and not of private right.' "
Id. at 534, 16 S.Ct. 600 (quoting Magner v. People , 97 Ill. 320 (1881) (emphasis to indicate portion on which plaintiffs rely) ). Plaintiffs' reliance is misplaced for at least two reasons. First, the statement was not made by the Court as a comment on the nature of the public trust; the Court was quoting a much larger section from an Illinois Supreme Court case to support its point that state courts had also concluded that the states have authority "to qualify and restrict the ownership in game killed within its limits." Id. at 532-33, 16 S.Ct. 600. Second, the Court held only that the nature of property in game gives the state the authority to regulate the taking of game and to prohibit its shipment out of state; it did not make any holding regarding affirmative duties of the states with respect to game or the public trust. See, e.g. , id. at 534, 16 S.Ct. 600.
Plaintiffs also rely on the Oregon Supreme Court case of Dickerson for the proposition that the state has "powers and duties" over trust resources. In Dickerson , the defendant challenged his conviction for criminal mischief, ORS 164.354, which prohibits a person from intentionally *599 damaging "property of another." The defendant had aided and abetted his son in shooting two state-owned deer decoys that they believed were wild deer. The issue in the case was whether wild deer are "property of another" for purposes of the criminal mischief statute. Dickerson , 356 Or. at 823, 345 P.3d 447. To answer that question, the Supreme Court examined the nature of the state's sovereign interest in wild deer and concluded that "the state's sovereign interest in wild animals is in the nature of a 'legal * * * interest' within the meaning of ORS 164.305(2)." Id . at 834, 345 P.3d 447 (quoting ORS 164.305(2) (ellipsis in original) ). To reach that conclusion, the court *35 relied in part on "the trust metaphor-sometimes referred to as the 'wildlife trust doctrine'-wildlife is the corpus of the trust, the state is the trustee, and the public is the beneficiary." Id. The court went on to say that
"[a]lthough the trust metaphor is an imperfect one * * *, the state's powers and duties with respect to wildlife have many of the traditional attributes of a trustee's duties . Acting as a trustee, the state has the authority to manage and preserve wildlife resources and may seek compensation for damages to the trust corpus."
Id. at 835, 345 P.3d 447 (emphasis to indicate portion on which plaintiffs rely).
Plaintiffs' reliance on an excerpted statement is once again misplaced. In making that statement about the "powers and duties" of the state, the Supreme Court relied on earlier cases that had held that the state, as trustee, has authority to enact laws to protect wildlife. See State v. Pulos , 64 Or. 92, 95, 129 P. 128 (1913) ("[It is a] well-known principle that title to wild game is in the state, * * *; that the taking of them is not a right, but is a privilege, which may be restricted, prohibited, or conditioned, as the law-making power may see fit."); Portland Fish Co. v. Benson , 56 Or. 147, 154, 108 P. 122 (1910) ("The title to the bed of all navigable rivers being in the state, the right to fish therein is subject to its control and supervision. * * * The title to the fish, before they are captured, is in the state in its sovereign capacity, in trust for all its citizens, and the right to fish is subject to such laws as the legislature may enact tending to protect them from extinction by exhaustive methods of *600 capture."); State v. Hume , 52 Or. 1, 5-6, 95 P. 808 (1908) (stating generally recognized principle that, "as an incident of the assumed [sovereign] ownership, the legislative assembly may enact such laws as tend to protect the species from injury by human means and from extinction by exhaustive methods of capture"). Those cases, however, did not hold that the state has a duty to enact such laws. And, in Dickerson , the Supreme Court was not asked to determine if such a duty exists, and it did not do that.
There is nothing in our examination of Oregon's common-law public-trust doctrine that suggests that the doctrine imposes "fiduciary obligations" analogous to a legal "trust" to which trust law would apply, such as advocated by plaintiffs and amici law professors. Rather, the public-trust doctrine uses the word "trust" as an imperfect metaphor to capture the idea that the state is restrained from substantially impairing the common-law public right to use public-trust resources for certain purposes. Brusco Towboat , 30 Or. App. at 517, 567 P.2d 1037 ("The right of the public to use the waterways for these purposes has always been recognized at common law. As representative of the people, the sovereign bears the responsibility to preserve these rights." (Citation omitted.) ).
As discussed above, the Oregon public-trust doctrine is rooted in the idea that the state is restrained from disposing or allowing uses of public-trust resources that substantially impair the recognized public use of those resources. We can find no source under the Oregon conception of the public-trust doctrine for imposing fiduciary duties on the state to affirmatively act to protect public-trust resources from the effects of climate change. Accordingly, we conclude that the trial court correctly granted the state's motion for summary judgment and denied plaintiffs' motion for partial summary judgment based on the above conclusion. Because that conclusion resolves the controversy between the parties, we do not address the other declarations sought by plaintiffs. See ORS 28.060 ("The court may refuse to render or enter a declaratory judgment where such judgment, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."); Kramer , 285 Or. App. at 196, 395 P.3d 592 (holding that plaintiffs were not entitled to a declaration as *601 to the public nature of the lake where the declaration of the scope of the public-trust doctrine resolved the controversy).
Finally, because this case was for declaratory relief, dismissal of the case was not the correct disposition of it. The trial court should have entered a judgment declaring the parties' respective rights. See *36 Doe v. Medford School Dist. 549C , 232 Or. App. 38, 46, 221 P.3d 787 (2009) ("When the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim, however, our practice has been to review that determination as a matter of law and then remand for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits."). Accordingly, we vacate and remand for the trial court to enter a judgment consistent with this opinion that declares the parties' rights.
Vacated and remanded.

Plaintiffs were minor children who, through their guardians ad litem , sued defendants in 2011. However, we note that, since that time, plaintiffs have attained the age of majority.

The trial court substituted Governor Brown, in her official capacity as Governor of the State of Oregon, as a party for former Governor John Kitzhaber, M.D., after Governor Brown took office.

We recognize that the declarations plaintiffs requested in their motion differ in substantive ways from the declarations sought in their amended complaint. Because we conclude that the trial court correctly denied plaintiffs' motion for partial summary judgment, we do not address the import of those differences.

"The phrase 'submersible lands' generally refers to the land lying between the high-water mark and the low-water mark of a navigable body of water, whether tidal or nontidal; the term 'submerged lands' is used to describe the land lying below the low-water mark." Kramer v. City of Lake Oswego , 285 Or. App. 181, 201, 395 P.3d 592, rev. allowed , 362 Or. 38, 403 P.3d 776 (2017).

In an effort to make a complete record for appeal, the trial court also concluded that the separation-of-powers doctrine prevented it from granting the relief that plaintiffs requested. Plaintiffs argue on appeal that the trial court erred in reaching that issue. Because we affirm the trial court on other grounds, we do not address plaintiffs' argument.

We reject without discussion plaintiffs' assertion that the trial court applied an incorrect legal standard in considering the parties' summary judgment motions based on a footnote discussion by the court about legislative findings the Oregon legislature had made with regard to climate change.

"Title-navigable" waters are "waterways to which the state was granted ownership of the underlying land as an incident of sovereignty under the equal-footing doctrine." Kramer , 285 Or. App. at 198, 395 P.3d 592. What constitutes a "title-navigable" waterway is a matter of federal law. PPL Montana, LLC v. Montana , 565 U.S. 576, 591, 132 S.Ct. 1215, 182 L.Ed.2d 77 (2012).

See Morse v. Oregon Division of State Lands , 285 Or. 197, 203, 590 P.2d 709 (1979) (state not prohibited by the public-trust doctrine from granting permit for estuary fill for nonwater-related uses; "[t]here is no grant here to a private party which results in such substantial impairment to the public's interest as would be beyond the power of the legislature to authorize"); Cook v. Dabney , 70 Or. 529, 532, 139 P. 721 (1914) (state had no right to convey property "in a manner and for a purpose which would act as a direct and permanent impediment to navigation"); Corvallis & Eastern R. Co. , 61 Or. at 372, 121 P. 418 (rejecting argument that the state could convey title to tidelands only for a public benefit); Bowlby v. Shively , 22 Or. 410, 427, 30 P. 154 (1892), aff'd , 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894) (state may dispose of tidelands in whatever manner it deems best, "subject only to the paramount right of navigation and the uses of commerce").

Several individuals and citizen organizations also filed an amicus curiae brief in support of plaintiffs. In that brief, they describe the dire effects of climate change on Oregon's resources, citizens, and economy; assert, based on the best available science, that the state is failing to take action to prevent substantial impairment to Oregon's public-trust resources from the effects of climate change; and outline the practical solutions that currently exist and could be employed by the state to address those problems.

We note that, on appeal, the state concedes that "title-navigable" waterways themselves, in addition to submerged and submersible lands, are covered by the public-trust doctrine, and that the trial court erred in that respect. However, because our disposition obviates the need to address precisely what resources are covered by the public-trust doctrine, we decline to address whether that concession is well-taken. See Kramer , 285 Or. App. at 199-200, 200 n. 20, 395 P.3d 592 (declining to address whether the public-trust doctrine applies to all navigable-in-fact waterways because it was not necessary to the disposition of the case).

In discussing Geer and Dickerson , which are cases based on the state's sovereign interest in wildlife, we express no opinion whether those cases are based on the public-trust doctrine, rather than on a separate "wildlife trust doctrine," as asserted by the state. Rather, we examine those cases to determine if they stand for the more general proposition advocated by plaintiffs that state sovereign interest in a resource comes with an affirmative fiduciary obligation to protect that resource.